UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| NORTHSHORE SHEET METAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> SHEET METAL WORKERS INTERNATIONAL ASSOCIATION, LOCAL 66, <br><br> Defendant. | Case No. <br><br> ***PLAINTIFF'S COMPLAINT FOR RELIEF UNDER § 301 OF THE LABOR MANAGEMENT RELATIONS ACT*** |

Plaintiff complains, and for its cause of action against Defendant, alleges as follows:

### I.   JURISDICTION AND VENUE

1. Plaintiff claims for relief, pursuant to Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(c), and the Court having jurisdiction thereunder.

2. Venue is proper in this Court because the matter giving rise to this complaint affects a labor agreement negotiated within this judicial district, and has impact on employees within judicial district, 29 U.S.C. § 185(c).

*PLAINTIFF'S COMPLAINT FOR RELIEF UNDER §301 OF THE LMRA* - Page 1
CASE NO.

**DAVIS GRIMM PAYNE & MARRA**
701 Fifth Avenue, Suite 4040
Seattle, WA 98104
Ph. (206) 447-0182 • Fax: (206) 622-9927

## II.     PARTIES

3.      Plaintiff Northshore Sheet Metal, Inc. ("Plaintiff" or "Northshore") is an employer in the sheet metal industry. Northshore is a Washington corporation doing business in Snohomish County. Washington. Northshore is a corporation engaged in an industry affecting commerce as defined by the LMRA.

4.      Defendant Sheet Metal Workers International Association, Local 66 ("Defendant" or "Union") is a labor organization with its principal place of business in Snohomish County, Washington. It represents collective bargaining unit persons engaged in the construction industry. That industry affects commerce within the meaning of the National Labor Relations Act, 29 U.S.C. §§ 142(1), 152(5).

## III.     FACTUAL ALLEGATIONS

5.      The Union is the exclusive collective bargaining representative of certain classifications of Northshore employees for King, Snohomish, Island, Kitsap, Clallam, Jefferson, Mason, Pierce, Thurston, Lewis, Grays Harbor, Cowlitz, Pacific and Wahkiakum Counties in the State of Washington.

6.      Northshore and the Union are parties to an expired collective bargaining agreement dated June 1, 2009 through May 31, 2012. The collective bargaining agreement contains a final and binding arbitration procedure for labor disputes. This arbitration procedure is found in the Parties' Letter of Understanding, which is an addendum to the Standard Form Union Agreement (referred to as the "LOU").

7.      The expired collective bargaining agreement was the result of a settlement. That settlement was memorialized in a Settlement Agreement, executed on January 12, 2015
*PLAINTIFF'S COMPLAINT FOR RELIEF UNDER §301 OF THE LMRA* - Page 2
CASE NO.

**DAVIS GRIMM PAYNE & MARRA**
701 Fifth Avenue, Suite 4040
Seattle, WA 98104
Ph. (206) 447-0182 • Fax: (206) 622-9927

("Settlement Agreement"). **Exhibit 1.** The Settlement Agreement ended a lengthy and disruptive labor dispute that had lasted approximately 2 ½ years.

8. The Settlement Agreement was intended to resolve all present and past issues between Northshore, the Union, and the local Trust Funds associated with the Union.

9. The Settlement Agreement contained a dispute resolution clause. Northshore and the Union agreed to mediate any disputes over the remaining, interpretative, or enforcement matters of the Settlement Agreement; if the dispute was not resolved in mediation, Northshore and the Union agreed to be bound by the arbitration procedure in the LOU.

10. Section 3.5 of the Settlement Agreement provides:

> For a period of 180 days after the *Agreement's Effective Date*, a *Company* employee may demonstrate that he/she did not receive their total wage scale (wages, plus benefits) either as scheduled, or in an equivalent manner. This includes a total combination of wages, pension contributions, health and welfare payments, reduction of NWDC withholding, vacation, or overpayment on a check. The *Company* will promptly make up the difference to the employee. The Company will not be responsible for any additional payment obligations to a *Plan*. <u>The parties agree that a dispute over this provision is subject to the dispute resolution clause of this *Settlement Agreement*.</u>

11. The dispute resolution clause in the Settlement Agreement binds the Parties to that Agreement to the compulsory final and binding arbitration mechanism found in the LOU.

12. On July 9, 2015, the last business day before the 180 days expired, the Union, by and through its attorney, presented a list of names and sought monies owed, pursuant to §3.5 of the Settlement Agreement. The request only contained a list of names.

*PLAINTIFF'S COMPLAINT FOR RELIEF UNDER §301 OF THE LMRA* - Page 3
CASE NO.

**DAVIS GRIMM PAYNE & MARRA**
701 Fifth Avenue, Suite 4040
Seattle, WA 98104
Ph. (206) 447-0182 • Fax: (206) 622-9927

13.     On July 13, 2015, Northshore, by and through its attorney, sought information from the Union. This request was provided so Northshore could properly determine if the employees listed were owed any money under the terms of the Settlement Agreement; and if so, how much.

14.     On July 20, 2015, the Union, by and through its attorney, provided a spreadsheet. The Union provided no supporting documentation. Nor did the Union provide any explanation as to how the spreadsheet was created, nor why certain information was missing.

15.     On July 28, 2015, Northshore, by and through its attorney, again sought the information related to its determination as to whether any employees were owed money pursuant to §3.5 of the Settlement Agreement; and if so, how much. The Union still has not provided that information.

16.     The Parties are also in the process of bargaining a new successor labor agreement. The Parties have already reached a tentative agreement on wages and benefits for the successor agreement.

17.     On August 7, Northshore and the Union met for bargaining. The Union had indicated that a strike was possible. At the end of the August 7, 2015 bargaining session, the Union claimed that one of the unresolved issues was the payment of "fringe benefits" as required by §3.5 of the Settlement Agreement.

18.     On information and belief, on August 10, 2015, the Union held a strike authorization vote as it related to Northshore. On information and belief, one of the issues discussed by Tim Carter was that Northshore still owed "fringe benefits;" he later stated that the Union needed to make an example of Northshore.

*PLAINTIFF'S COMPLAINT FOR RELIEF UNDER §301 OF THE LMRA* - Page 4
CASE NO.

**DAVIS GRIMM PAYNE & MARRA**
701 Fifth Avenue, Suite 4040
Seattle, WA 98104
Ph. (206) 447-0182 • Fax: (206) 622-9927

19. On August 17, 2015, Northshore, by and through its attorney, received a letter (dated August 13, 2015) from the Union's attorney. The letter was a response to Northshore's prior August 7, 2015 bargaining proposal. The Union referenced the "fringe benefits" allegedly owed, pursuant to §3.5 of the Settlement Agreement.

20. On August 20, 2015, the Union engaged in a strike against Northshore Sheet Metal.

21. The strikers had pickets at Northshore's facility, as well as construction sites where Northshore was contracted to perform work.

22. Northshore's bargaining unit employees proceeded to engage in a concentrated work stoppage and picketed Northshore, and its constructions sites. This work stoppage has continued unabated.

23. General Contractors, with whom Northshore is performing work, have demanded that Northshore not perform work on their job sites while the strike is ongoing.

24. The Union has engaged in strike activity on job sites, whether Northshore employees are present and working, or not.

25. The strikers carried signs, stating:

> NORTHSHORE
>
> PAY
>
> MY
>
> BENEFITS!
>
> LABOR DISPUTE

*PLAINTIFF'S COMPLAINT FOR RELIEF UNDER §301 OF THE LMRA* - Page 5
CASE NO.

**DAVIS GRIMM PAYNE & MARRA**
701 Fifth Avenue, Suite 4040
Seattle, WA 98104
Ph. (206) 447-0182 • Fax: (206) 622-9927

26. The "fringe benefits" referred to on the pickets involves the Union's allegations surrounding §3.5 of the Settlement Agreement.

27. The dispute over §3.5 of the Settlement Agreement was one of the purposes of the Union's strike.

## IV.     CAUSE OF ACTION

### BREACH OF LABOR AGREEMENT, 29 U.S.C. § 185

28. Plaintiff realleges paragraphs 1 through 27 above.

29. The Union's strike breached the Union's contractual obligations not to strike. The Union has repudiated the labor agreements by engaging in this strike.

30. The Parties incorporated a dispute resolution method for resolving any questions over §3.5 of the Settlement Agreement, which is contained in the Parties' addendum LOU to the Standard Form Union Agreement. The LOU contains the Parties' final and binding arbitration provision.

31. Section 301 of the LMRA, 29 U.S.C. § 185, governs contracts between a labor organization and an employer that "are significant to the maintenance of labor peace between them." *Retail Clerks Int'l Assoc., Local 128 v. Lion Dry Goods*, 369 U.S. 17, 28 (1962).

32. The Settlement Agreement was intended to resolve a contentious labor dispute between the parties, including the resolution of a successor labor agreement, federal litigation, federal administrative action, and prior unlawful strikes by the Union. The Settlement Agreement arose under a dispute related to the parties' collective bargaining agreement.

PLAINTIFF'S COMPLAINT FOR RELIEF
UNDER §301 OF THE LMRA - Page 6
CASE NO.

DAVIS GRIMM PAYNE & MARRA
701 Fifth Avenue, Suite 4040
Seattle, WA 98104
Ph. (206) 447-0182 • Fax: (206) 622-9927

33.     Section 301 empowers (and requires) the courts to create a federal body of common law to govern contracts between the union and employer. *Textile Workers Union of America v. Lincoln Mills of Alabama*, 353 U.S. 448, 457-459 (1957).

34.     As part of that federal common law, the courts have determined that the final and binding labor arbitration is the *quid pro quo* for an agreement not to strike. *Id.* ("Plainly the agreement to arbitrate grievance disputes is the quid pro quo for an agreement not to strike.").

35.     The agreement not to strike is implied in labor agreements when there is a final and binding labor arbitration clause. The two clauses have a coterminous relationship. *Gateway Coal Co. v. United Mine Workers of America*, 141 U.S. 368, 382 (1974).

36.     By striking with the Union's stated purpose, the Union has breached its contractual obligation not to strike.

V.   **IRREPARABLE HARM TO PLAINTIFF WITH NO ADEQUATE REMEDY**

37.     The Union's strike has resulted in immediate and irreparable injury to Plaintiff. The strike has caused Northshore to be kicked off jobs, delayed jobs, and threatens contractual obligations.

38.     Continuation of the strike described above will seriously harm Plaintiff, and will continue to interfere with Plaintiff's operations. Plaintiff may lose contracts, revenue, as well as prospective construction contracts, due to the Defendant's breach.

39.     There is no adequate remedy under the law, except to issue an injunction and force Defendant to proceed through the agreed-upon contractual procedures.

40.     Unless the conduct is immediately enjoined and restrained, grave and irreparable injury and damage will unavoidably result to Plaintiff in that Plaintiff will not

PLAINTIFF'S COMPLAINT FOR RELIEF
UNDER §301 OF THE LMRA - Page 7
CASE NO.

DAVIS GRIMM PAYNE & MARRA
701 Fifth Avenue, Suite 4040
Seattle, WA 98104
Ph. (206) 447-0182 • Fax: (206) 622-9927

have access to, and sole and peaceful use of, its property and its various construction sites and Plaintiff may lose revenue and present and prospective customers.

41.     Plaintiff has no adequate remedy at law.  The consequences of Defendant's breach as set forth above will cause serious and irreparable harm to Plaintiff financially, and other substantial harm.  The amount of monetary suffered by Plaintiff will difficult to fully ascertain and in any event, would be an inadequate remedy for the harm which Plaintiff is suffering and will continue to suffer so long as the Defendant's activities are allowed to continue.

## VI.     PRAYER FOR RELIEF

1. An Order enjoining Defendant from continuing its strike activity;
2. An Order requiring Defendant to adhere to adhere to the dispute resolution procedures in the labor agreements that culminates with final and binding arbitration.
3. Actual and compensatory damages due based on the Union's contractual repudiation.
4. Extraordinary expenses, attorney fees, costs, pre- and post-judgment interest due based on the Union's contractual repudiation.
5. For such other and further relief as the Court finds just and equitable.

PLAINTIFF'S COMPLAINT FOR RELIEF
UNDER §301 OF THE LMRA - Page 8
CASE NO.

DAVIS GRIMM PAYNE & MARRA
701 Fifth Avenue, Suite 4040
Seattle, WA 98104
Ph. (206) 447-0182 • Fax: (206) 622-9927

Respectfully Submitted this \_\_22\_\_ day of \_\_August\_\_, 2015.

By: /s/ Christopher L. Hilgenfeld
Christopher L. Hilgenfeld, WSBA #36037
Davis Grimm Payne & Marra
701 5th Avenue, Suite 4040
Seattle, WA 98104-7097
Ph. (206) 447-0182
Fax: (206) 622-9927
Email: chilgenfeld@davisgrimmpayne.com
**Attorneys for Plaintiff**
**Northshore Sheet Metal, Inc.**

*PLAINTIFF'S COMPLAINT FOR RELIEF UNDER §301 OF THE LMRA* - Page 9
CASE NO.

**DAVIS GRIMM PAYNE & MARRA**
701 Fifth Avenue, Suite 4040
Seattle, WA 98104
Ph. (206) 447-0182 • Fax: (206) 622-9927