UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| NORTHSHORE SHEET METAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> SHEET METAL WORKERS INTERNATIONAL ASSOCIATION, LOCAL 66, <br><br> Defendant. | Case No. <br><br> ***DECLARATION OF JEFF MEYER*** |

I, JEFF MEYER, declare as follows:

1.  I am one of the owners of Northshore Sheet Metal, Inc. ("Northshore") and its Co-President. My day-to-day duties involve overseeing the Company's operations, and managing and procuring contracts.

2.  Northshore is in the construction industry, primarily within the State of Washington. Northshore installs architectural sheet metal and siding products at commercial job sites. Northshore also manufactures a variety of sheet metal products and cement board and other siding products for itself, as well as other contractors. Northshore performs work at multiple job sites at any given time.

*DECLARATION OF JEFF MEYER* - Page 1
CASE NO.

**DAVIS GRIMM PAYNE & MARRA**
701 Fifth Avenue, Suite 4040
Seattle, WA 98104
Ph. (206) 447-0182 • Fax: (206) 622-9927

3.     Northshore Sheet Metal has specialized in Architectural Sheet Metal for over 25 years. I have spent significant time building the company's reputation and good will. These are assets to the company when we are bidding for new construction work.

4.     Northshore and the Sheet Metal Workers Local 66 ("Union" or "Local 66") were involved in a lengthy and disruptive labor dispute, starting in June 2012.

5.     In December 2014, we finalized the terms of a settlement that resolved all outstanding issues between the Union and Northshore. We entered into a Settlement Agreement. **Exhibit 2.** That agreement was designed to resolve all current and past issues. As part of that Settlement Agreement, we entered into a successor labor agreement. Part of that agreement was contained in the Standard Form Union Agreement ("SFUA"). Part of that successor agreement was contained in an addendum as a Letter of Understanding which modified the SFUA. **Exhibit 3.** Part of that agreement was also contained in different Letters of Understanding signed by the Parties at the same time.

6.     In April 2015, the Union and Northshore started bargaining over a successor labor agreement. Prior to August 2015 the Parties had reached a tentative agreement on wages and benefits for the successor agreement.

7.     I am part of the bargaining team. We met with the Union on August 7, 2015 to continue bargaining over a successor labor agreement. At that meeting, the Union (I believe it was Dan Hutzenbiler (Union attorney), but it may have been Tim Carter (Union Business Manager) stated that there were still issues with Northshore over the payment of fringe benefits related to the January 2015 Settlement Agreement.

*DECLARATION OF JEFF MEYER* - Page 2  
CASE NO.

**DAVIS GRIMM PAYNE & MARRA**  
701 Fifth Avenue, Suite 4040  
Seattle, WA 98104  
Ph. (206) 447-0182 • Fax: (206) 622-9927

8. I was informed by some of my employees that the Sheet Metal Workers Local 66 ("Union" or "Local 66") was holding a strike authorization vote on August 10, 2015. I was later told that a strike was authorized.

9. On August 20, 2015, the Union engaged in its strike against Northshore. The Union picketed at the Northshore main office. The Union also picketed at construction sites where Northshore had a contract to perform work.

10. **Exhibit 1** is a picture of the picket signs the Union was holding at the Northshore facility. The only issue with benefits involved an unsubstantiated claim by the Union that employees were owed money pursuant to our January 2015 Settlement Agreement.

11. Northshore has lost revenue due to the strike. We are working on the following jobs: 500 Fairview; Adams Elementary; Chambers Creek Waste Water Treatment Plant; U240; Bothell City Hall; 1600 7th Avenue; Maydenbauer Center; Swedish Medical Center; Biller Residence; Alley 111; Bellevue Square South Commons; Block #45; Cat and Critter. We also have a number of jobs starting in the immediate future. We have been directed to stop working on several projects. We lose significant revenue each day the strike continues. We may also lose prospective work due to the harm to our goodwill and reputation caused by the strike. I have also been told by General Contractors that they do not want to accept bids from subcontractors with labor disputes and strikes.

12. There is a risk that we are not going to be able to finish some of the jobs within our contractual obligation. Many of our jobs have tight time lines. Every day we are not working make this risk even greater. The loss of good will and reputation for failing to make contractual deadlines, and causing General Contractors to become involved in a labor

*DECLARATION OF JEFF MEYER* - Page 3  
CASE NO.

**DAVIS GRIMM PAYNE & MARRA**  
701 Fifth Avenue, Suite 4040  
Seattle, WA 98104  
Ph. (206) 447-0182 • Fax: (206) 622-9927

dispute is irreparable and will create a permanent loss to the company on all business moving forward. General Contractors do not want to do business with companies that do not complete projects on time, and cause work stoppages.

13. We have been directed not to perform any work on some of the construction sites. This work stoppage is for an indefinite period. We have notified the Union when we were not going to be working on that site. Despite this, the Union has engaged in picketing, causing complete work stoppage on these sites with the other subcontractors and trades.

I have read the foregoing statements and declare under penalty of perjury under the laws of the State of Washington and the United States that the foregoing statements are true and correct.

DATED at SEATTLE, WA , Washington this 22nd day of August , 2015.

_____
Jeffrey D. Meyer

*DECLARATION OF JEFF MEYER* - Page 4
CASE NO.

**DAVIS GRIMM PAYNE & MARRA**
701 Fifth Avenue, Suite 4040
Seattle, WA 98104
Ph. (206) 447-0182 • Fax: (206) 622-9927