Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| NORTHSHORE SHEET METAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> SHEET METAL WORKERS INTERNATIONAL ASSOCIATION, LOCAL 66, <br><br> Defendant. | Case No. 2:15-cv-01349 MJP <br><br> ***PLAINTIFF'S REPLY FOR ITS TEMPORARY RESTRAINING ORDER*** <br><br> Noted for Hearing: <br> Date: **Wednesday, September 2, 2015** <br> Time: **10:00 a.m.** |

This temporary restraining order ("TRO") not only affects Northshore Sheet Metal ("Plaintiff" or "Northshore") and Defendant Sheet Metal Workers International Association, Local 66 ("Defendant" or "Union"), it affects an entire community. This motion affects Northshore's employees and their families. It also affects a multitude of business, their employees and their families. This TRO also does not just affect the financial impact caused by the strike; there is irreparable harm to Northshore through loss of prospective goodwill, business reputation and stability every day this strike continues.

*PLAINTIFF'S REPLY FOR TRO* - Page 1
Case No. 15-cv-01349 MJP

**DAVIS GRIMM PAYNE & MARRA**
701 Fifth Avenue, Suite 4040
Seattle, WA 98104
Ph. (206) 447-0182 • Fax: (206) 622-9927

The Union essentially argues that (i) *Boys Market* does not apply; and/or (ii) Northshore has failed to meet the standards of the Norris-LaGuardia Act. Both arguments are without merit.

### A. BOYS MARKET IS APPROPRIATE TO ENJOIN THE UNION'S STRIKE ACTION.

#### 1. The Union has attempted to hide its objective

An injunction is proper if an underlying purpose of the strike action is to contravene mandatory arbitration. The Union clearly had an underlying purpose to force Northshore to agree to its "benefit" dispute rather than proceed to mandatory arbitration. As the National Labor Relations Board ("Board") has consistently found: "picket signs speak louder than words." *Local 25, Int'l Board of Elec. Workers*, 148 NLRB 1560, 1577 (1964); *Local 25, Int'l Board of Elec. Workers*, 208 NLRB 337, 339 (1974). The Union has publicly announced its intent through picket signs, and it has continued to announce that the strike is over the "benefits" dispute. **(Dan Meyer Decl., Exh. 1)** (This picture was taken after Mr. Carter's declaration was provided.)

Moreover, the Union's self-serving declaration does not change the intended purpose. "It is well settled that a mere change in the wording of a picket sign, a union's self-serving declaration of disclaimer, or even a combination of both, does not, itself, suffice to establish that a union's motive [has been] diverted from its original [objective…]." *Valley Knitting Mills, Inc.*, 126 NLRB 441, 443 (1960) (citations omitted)). The picket signs (seeking "benefits") and the Union's actions – both in correspondence and at the bargaining table – make it clear that an objective of the strike is aimed at whether employees are owed compensation under the terms of the Settlement Agreement. The Union cannot avoid this by

*PLAINTIFF'S REPLY FOR TRO* - Page 2
Case No. 15-cv-01349 MJP

**DAVIS GRIMM PAYNE & MARRA**
701 Fifth Avenue, Suite 4040
Seattle, WA 98104
Ph. (206) 447-0182 • Fax: (206) 622-9927

simply providing a limited self-serving declaration, stating that it also had two other objectives.[1]

2. **The proper determination is whether the "benefits" issue was an "object" of the strike, not whether it was the sole or primary reason.**

The dispute over the Settlement Agreement "benefits" involves a significant amount of money allegedly owed for the Local 66 members' 401(k) contributions. Almost all of the members are affected. Although Northshore steadfastly believes that it has paid everything it owes to the employees and the trusts, Northshore recognizes this is a significant issue for the Union's membership. On the other hand, the extra-territorial issue regarding the Parties' successor collective bargaining agreement affects no Local 66 members, and it does not even affect any future work in the Union's jurisdiction. The Employer's last proposal on this issue essentially stated: The Employer agrees to all terms and conditions, except to work outside of the Union's jurisdictional area when performed by non-Local 66 employees. **(Hilgenfeld Supp. Decl., Exh. 2.)** In other words, the CBA is limited to the Union and its membership.

The Union's argument defies reason and common sense. The Union claims it is more concerned with an issue that does not affect its membership or its own interests (i.e., work in other jurisdictions), rather than an issue involving the "disappearance" of thousands of dollars of its members' 401(k) retirement. Even if Mr. Carter's declaration can be fully believed, however, the applicability of *Boys Market* does not rest on the Union's after-the-fact justification for its strike action. When interpreting the National Labor Relations Act ("NLRA"), the Courts have been forced to deal with situations where the Union engages in a

---

[1] Mr. Carter's declaration stated that there were two primary objectives of the strike: (1) Shop Steward issue; and (2) the work performed by Northshore outside of Local 66's jurisdiction. *See Dkt. 10.* The Employer accepted the Union's language regarding the Shop Steward on August 25. **(Hilgenfeld Supp. Decl., Exh. 1.)** The Union has continued to engage in its strike action.

PLAINTIFF'S REPLY FOR TRO - Page 3
Case No. 15-cv-01349 MJP

DAVIS GRIMM PAYNE & MARRA
701 Fifth Avenue, Suite 4040
Seattle, WA 98104
Ph. (206) 447-0182 • Fax: (206) 622-9927

strike with both a legitimate purpose, and an illegitimate purpose.[2] This issue most commonly arises in a secondary boycott. 29 U.S.C. 158(b)(4) (referred to as "8(b)(4)"); *NLRB v. Denver Bldg. & Const. Trades Council*, 341 U.S. 675, 689 (1951) (injunction was proper when "**an** object of the strike" involved an unlawful secondary purpose). After all, "[t]he fact that the union might have had other, valid reasons for picketing…does not absolve it from having an illegal objective." *Kaynard v. Local 25, Int'l Brotherhood of Elec. Workers*, 367 F. Supp. 1065, 1071 (E.D.N.Y. 1973) (*citing NLRB v. Local 25, Int'l Brotherhood of Elec. Workers,* 383 F.2d 449, 453 (2nd Cir. 1967)). Under this test, the proper inquiry is whether "an objective" of the Union's strike action is the underlying dispute that involves mandatory arbitration. This has been supported by other Courts rendering *Boys Market* injunctions. *See the Orders from New York Times Co. v. Newspaper and Mail Deliverers' Union of New York*, 592 F. Supp. 1043, 1051-52 (S.D.N.Y. 1984); *Otis Elevator Co. v. Local 1, Int'l Union of Elevator Constructors*, 684 F. Supp. 80, 83 (S.D.N.Y. 1988).

3. **A dispute arising from Section 3.5 of the Settlement Agreement does require mandatory arbitration**.

Defendant argues that the dispute arose after the expiration of the collective bargaining agreement, and therefore is not arbitrable, citing *Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190 (1991); or, at least it is not clear and undisputed that the issue is subject to binding arbitration.[3]

This issue was fully briefed in Northshore's motion. In short, Section 3.5 of the Parties' Settlement Agreement expressly provides that the Parties' agree to dispute

---

[2] The Employer does not concede that a strike on a permissive subject is a legitimate reason. *See* Section C of this Brief.

[3] Defendant implicitly concedes that mandatory binding arbitration creates an implied no-strike provision.

PLAINTIFF'S REPLY FOR TRO - Page 4
Case No. 15-cv-01349 MJP

**DAVIS GRIMM PAYNE & MARRA**
701 Fifth Avenue, Suite 4040
Seattle, WA 98104
Ph. (206) 447-0182 • Fax: (206) 622-9927

resolution, if there is a dispute over that issue. The Union does not dispute that the pickets seeking "benefits" are directed at the Settlement Agreement. The Settlement Agreement has adopted by incorporation the mandatory arbitration procedures found in the Parties' collective bargaining agreement. There is no evidence the Parties intended to limit the dispute resolution clause in the Settlement Agreement to only resolve disputes that occurred prior to May 31, 2015.

B. **THE INTERPLAY BETWEEN NORRIS LaGUARDIA AND LMRA NECESSITATES AN INJUNCTION IN THIS MATTER.**

The determination as to the applicability of the Norris-LaGuardia Act related to the Labor Management Relations Act ("LMRA") requires a balancing of federal policies. In *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 458-59 (1957) (finding employer was required to arbitrate a dispute), the Supreme Court analyzed the interplay between Norris-LaGuardia and Section 301 of the LMRA:

> The congressional policy in favor of the enforcement of agreements to arbitrate grievance disputes being clear, there is no reason to submit them to the requirements of § 7 of the Norris-LaGuardia Act.

The U.S. Supreme Court has also set aside Norris-LaGuardia's Section 4 prohibition against strikes. *Boys Market, Inc. v. Retail Clerks Union*, 398 U.S. 235, 253 (1970) ("The Norris-LaGuardia Act was responsive to a situation totally different from that which exists today."). In doing so, the Court found that "'the unavailability of equitable relief in the arbitration context' would frustrate Congress' policy 'favoring the voluntary establishment of a mechanism for the peaceful resolution of labor disputes....'" *Tejidos de Coamo, Inc. v. Int'l Ladies' Garment Workers' Union*, 22 F.3d 8, (1st Cir. 1994) (*quoting Boys Market*, 398 U.S. at 253).

*PLAINTIFF'S REPLY FOR TRO* - Page 5
Case No. 15-cv-01349 MJP

**DAVIS GRIMM PAYNE & MARRA**
701 Fifth Avenue, Suite 4040
Seattle, WA 98104
Ph. (206) 447-0182 • Fax: (206) 622-9927

In *Northern Stevedoring and Handling Corp. v. Int'l Longshoremen's and Warehousemen's Union, Local 60*, 685 F.2d 344 (9th Cir. 1982), the Court reviewed the issuance of a temporary restraining order without any findings or evidence from the opposing party. *Id.*, at 350. The Court determined that when the procedural requirements found in the Norris-LaGuardia Act did not frustrate the arbitral process, those procedural requirements should be followed. This holding is limited, however, to instances where the two Acts are not in conflict with one another. After all, "[the Court] need not 'elevate form over substance' to permit such a result; the 'Norris-LaGuardia Act was intended to protect real, not phantom interests.'" *Jacksonville Maritime Ass'n, Inc. v. Int'l Longshoremen's Ass'n*, 571 F.2d 319, 325 (5th Cir. 1978).

Even considering the Norris-LaGuardia Act, a TRO in this case is proper. Section 107 of the Norris-LaGuardia Act simply provides a roadmap for issuing an injunction. 29 U.S.C. § 107. It requires certain procedures: statements under oath supporting a complaint and testimony of witnesses under oath in open court with an opportunity for cross-examination, and the allowance of opposition testimony. *Id.* Section 107 also requires specific findings of fact by the court outlined in subsections (a) through (e). 29 U.S.C. § 107(a) – (e).

Subsections 107(b), (c), and (d) parallel the issues addressed in a typical Rule 65 injunction. *Cf.* 29 U.S.C. § 107(b), (c), and (d), *with* Fed. R. Civ. P. 65; *see also TejidosDe Coamo, Inc. v. Int'l Ladies' Garment Workers' Union*, 22 F.3d 8, 14 n. 11 (1st Cir. 1994). Those subsections were fully addressed in Plaintiff's initial motion. Subsections (a) and (e) present additional questions.

PLAINTIFF'S REPLY FOR TRO - Page 6
Case No. 15-cv-01349 MJP

**DAVIS GRIMM PAYNE & MARRA**
701 Fifth Avenue, Suite 4040
Seattle, WA 98104
Ph. (206) 447-0182 • Fax: (206) 622-9927

1. **Under Section 107(a) of the Norris-LaGuardia Act, does the Union's strike action does involve an unlawful act that will be continued unless restrained?**

This issue has been decided by *Boys Market*. In cases where a party is attempting to enforce arbitration through a Section 301 labor agreement, the Parties are required to go through that process, and refrain from self-help measures, such as striking. The Union, by striking over an arbitrable issue, has engaged in an unlawful act. The Union has further claimed that it has no intention to cease its unlawful activity. **(Dkt 5, Exhs. 11, 12.)**

2. **Is Section 107(e) of the Norris-LaGuardia Act applicable for a *Boys Market* injunction?**

As stated, the U.S. Supreme Court has held that not all provisions of the Norris-LaGuardia Act are applicable to *Boys Market* injunctions. The federal judicial power to enjoin strikes per *Boys Market* is primarily concerned with promoting arbitration, rather than the prevention of violence. Subsection 107(e) of Norris-LaGuardia is concerned about picket line violence and the police's ability to stop violence. 29 U.S.C. § 107(e). As a result, finding that "police are unable or unwilling to protect an employer's property" is not appropriate for a *Boys Market* injunction. *See U.S. Steel Corp. v. United Mine Workers of America*, 456 F.2d 483, 488 (3rd Cir. 1972).[4]

After all, a standard injunction in a labor dispute generally involves strike violence, trespass, or other criminal activity. A *Boys Market* injunction, however, is concerned with *any* strike activity – even peaceful, otherwise lawful, picketing – that violates the Union's contractual duty to refrain from strike activity. The Employer believes that the Court certainly may take judicial notice that law enforcement is prohibited from taking action in an

---

[4] For an unpublished but informative decision, *see Hosp. for Joint Diseases & Medical Center v. Davis*, 1978 WL 1565 (S.D.N.Y. 1978) (unreported).

PLAINTIFF'S REPLY FOR TRO - Page 7
Case No. 15-cv-01349 MJP

DAVIS GRIMM PAYNE & MARRA
701 Fifth Avenue, Suite 4040
Seattle, WA 98104
Ph. (206) 447-0182 • Fax: (206) 622-9927

otherwise legal, peaceful picketing activity. In an abundance of caution, attached are letters from Bellevue Police Department and Snohomish County Sheriff's Department, stating they will not take action for peaceful labor picketing on public property that does not violate any criminal laws. **(Hilgenfeld Supp. Decl., Exh. 3.)**

 3. **<u>Northshore Meets the Requirements Under Section 108 of the Norris-LaGuardia Act</u>**.

The Union claims that injunctive relief is not appropriate because Northshore failed to "make every reasonable effort" to resolve the dispute, pursuant to 29 U.S.C. § 108. Section 108 of the Norris-LaGuardia Act encourages the Parties to resolve dispute through alternative means, such as arbitration. Northshore's motion is actually an attempt to do this. *Textile Workers Union of America v. Lincoln Mills of Alabama*, 353 U.S. 448, 458 (1957) (Requiring parties to arbitrate a labor dispute may violate the literal reading of the Norris-LaGuardia Act but not its intent to resolve disputes peacefully, and therefore, Section 108 did not provide a basis for limiting relief in a Section 301 lawsuit).

Northshore's request is actually in line with Section 108 of the Norris-LaGuardia Act. Northshore is attempting to resolve its dispute with the Union through arbitration. The *Boys Market* injunction furthers the goal enunciated in Section 108 of the Norris-LaGuardia Act.

Moreover, Northshore has made every reasonable effort to resolve this dispute. Northshore has consistently requested that the Union provide it with information that there is any basis that the employees (not the Trusts) have "demonstrated" a financial loss as required by the Settlement Agreement. This request occurred on July 13, July 28, and August 24. **(Dkt. 5 (Exhs. 5, 7, 9, 10); Hilgenfeld Supp. Decl., Exh. 4.)** Northshore also immediately requested that the Union refrain from its strike action in violation of its

DAVIS GRIMM PAYNE & MARRA
701 Fifth Avenue, Suite 4040
Seattle, WA 98104
Ph. (206) 447-0182 • Fax: (206) 622-9927

contractual obligations and permit the Parties an opportunity to resolve the dispute through the proper contractual mechanism. *Id.* The Union, not Northshore, has repudiated the Parties' agreement to arbitrate this dispute and engaged in this strike action. *Sidhu v. Flecto Co.*, 279 F.3d 896, 898 (9th Cir. 2002).

C. **THE PROPER BREADTH OF THE COURT'S ORDER.**

The Union would like the Court to issue an injunction that would allow it to change their picket signs, and continue to strike. This overt attempt to side-step its contractual obligations should not be allowed. Section 109 of the Norris-LaGuardia Act only requires that the injunction be properly and narrowly tailored to the circumstances and that certain perfunctory steps be met (i.e., findings of fact). In doing so, however, Section 109 must conform to national labor policy favoring arbitration of disputes. Any injunctive relief must provide an immediate, effective remedy that adheres to the national policy fostering arbitration.

The Union has attempted to continue its strike by simply suggesting it may turn-around its picket sign, and declare a "new" purpose. *See, e.g.,* 66 A.L.R. 11 (1984) ("[A] change in the focus of the strike from a nonarbitrable to an arbitrate one, or vice versa, does not defeat the court's jurisdiction to issue a *Boys Market* injunction, where the true nature of the dispute is an arbitrable grievance"). This is not a new argument. In secondary boycott actions, the Board and the Courts regularly must deal with a dual-motive claim by a union. In fact, the Board regularly seeks injunctions related to the balancing of employees' NLRA Section 7 rights and limiting the unlawful objective. *Ampersand Pub. LLC v. NLRB*, 702 F.2d 51, 58 (D.C. Cir. 2012) ("We do not think employees can extend §7 [of the NLRA] protection by wrapping an unprotected goal in a protected one."). Moreover, Courts have

PLAINTIFF'S REPLY FOR TRO - Page 9
Case No. 15-cv-01349 MJP

DAVIS GRIMM PAYNE & MARRA
701 Fifth Avenue, Suite 4040
Seattle, WA 98104
Ph. (206) 447-0182 • Fax: (206) 622-9927

found that even prospective injunctions are appropriate should it be required to cease the unlawful objective. *S. Ohio Coal Co. v. United Mine Workers of Am.*, 551 F.2d 695, 709 (6th Cir. 1977).

Plaintiff believes the proposed Order is appropriate, with a temporal limitation which would expire upon the resolution of the dispute and within the geographical borders defined by the contractual jurisdiction of the Parties. The breadth of this injunction is required to provide immediate, effective relief from the Union's illegal conduct. *See Old Ben Coal Corp. v. Local Union No. 1487 of United Mine Workers of Am.*, 500 F.2d 950, 953-54 (7th Cir. 1974) (court found that any remedy in that case less than a permanent injunction would be inadequate.). After all, "[t]he Norris-LaGuardia Act declares that the breadth of an injunction is to be determined by the extent of the misconduct." *Id.*

Here, the Union has made it clear that it has no intention of ceasing its strike activity, and has consistently changed its "purpose" on a whim. After being informed that it would be illegal to reach impasse or strike over a permissive subject of bargaining, the Union immediately asserted "benefits" as its primary issue. On August 21, 2015, after being informed that it was breaching its no-strike obligation under the Settlement Agreement, the Union immediately claimed it had "several" reasons to strike without asserting any actual reasons. **(Dkt. 5-9.)** Then, along with that response, the Union wrote to its membership:

> If [Northshore is] found to be correct (which could take months) and they had terminated you during this dispute, you would be terminated just like you were the day before the decision. Nothing additional would happen to you. Local 66 would be ordered to put up a notice that we had committed an unfair labor practice, and we would be ordered to go back to the table and negotiate. No monetary penalty.

**(Lucas Decl., Exh. 1.)**

*PLAINTIFF'S REPLY FOR TRO* - Page 10
Case No. 15-cv-01349 MJP

DAVIS GRIMM PAYNE & MARRA
701 Fifth Avenue, Suite 4040
Seattle, WA 98104
Ph. (206) 447-0182 • Fax: (206) 622-9927

In normal instances this would simply be rhetoric; however, the facts behind the statement make it clear – at least to the Employer – this statement is simply further evidence that the Union will take whatever steps are necessary to achieve its illegitimate goal. As background, employees that engage in an unprotected strike lose the protection of the Act. *Nassau Ins. Co.*, 280 NLRB No. 103 n. 3 (1986). A strike with a permissive subject of bargaining as an objective is an unprotected strike under the NLRA. *Id.* That means an employee who engages in an unprotected strike may lose their job, even if the employee did not realize s/he was engaging in unprotected conduct. *In re Pratt*, 338 NLRB 61, 64 (2002). The Board has held that a bargaining proposal, such as Mr. Carter describes in his declaration, seeks to impose conditions of employment for Company employees outside of the Union's bargaining unit, and is therefore concerning a permissive (or non-mandatory) subject of bargaining. *Cf. A.D. Cheatham*, 126 NLRB 997, 1002-03 (1960) *with Hilgenfeld Supp. Decl., Exh. 2 and Dkt. 10*.

By engaging in a strike with an objective to impose conditions on Northshore regarding employees not in Local 66's jurisdiction (i.e., permissive subject of bargaining), the employees lose the protection of the Act, and are subject to termination. *Id.* The Union's statement is particularly troubling because the Employer provided the Union with a copy of this case in July bargaining.

This appears to be simply a game to the Union, and they are putting people's livelihood at risk. Because the Union is not concerned about a damages suit, it believes it can simply act with impunity. As soon as this Court would enjoin a strike over a dispute concerning the Settlement Agreement, the Employer strongly believes the Union would simply turn-around its picket sign and claim to be striking for another reason. There is

*PLAINTIFF'S REPLY FOR TRO* - Page 11
Case No. 15-cv-01349 MJP

**DAVIS GRIMM PAYNE & MARRA**
701 Fifth Avenue, Suite 4040
Seattle, WA 98104
Ph. (206) 447-0182 • Fax: (206) 622-9927

sufficient evidence that the only way to protect the arbitration process is to cease the strike action until there is a complete resolution of the current dispute. When there is sufficient evidence that an "anticipated labor dispute is sufficiently likely to occur" the Court may fashion the appropriate remedy to effectuate relief. *See generally S. Ohio Coal Co.,* 551 F.2d at 706-07.

All of the Union's strike actions should be ceased because they are inextricably linked to the Settlement Agreement dispute and its final and binding arbitration procedures. It is perfectly appropriate for the Court to consider the Union's true objectives when determining the breadth of the injunction. What is the Union's primary motivation: is it an issue involving thousands of dollars allegedly related to the members' retirement contributions; or, is it an issue concerning an extra-territorial dispute that does not affect any Local 66 members? Any injunction must effectively enjoin the underlying objective of the Union to influence the "benefits" dispute through its strike action. That requires a broad protective order. To the extent, however, the Court feels it necessary to further limit an Order, see the following for Orders related to a union's unlawful objective: *New York Times,* 592 F. Supp. at 1051-52; *Otis Elevator,* 684 F. Supp. at 83; *Kaynard,* 367 F. Supp. at 1072; *Alton & Southern v. BMWE,* 899 F.Supp. 646, 652 (D.D.C. 1995); and, *Kentov v. Sheet Metal Workers Int'l, Local 15,* 418 F.3d 1259, 1267 (11th Cir. 2005). To the extent the Court limits the Order, the Employer would also request a finding that the Union's objective is unlawful and the strike is enjoined based off its attempt to influence, directly and indirectly, the "benefits" dispute that is subject to mandatory binding arbitration, absent a change in circumstances.

PLAINTIFF'S REPLY FOR TRO - Page 12
Case No. 15-cv-01349 MJP

DAVIS GRIMM PAYNE & MARRA
701 Fifth Avenue, Suite 4040
Seattle, WA 98104
Ph. (206) 447-0182 • Fax: (206) 622-9927

Respectfully submitted this 28th day of August, 2015.

By: /s/
Christopher L. Hilgenfeld, WSBA #36037
Davis Grimm Payne & Marra
701 5th Avenue, Suite 4040
Seattle, WA 98104-7097
Phone: (206) 447-0182
Fax: (206) 622-9927
Email: chilgenfeld@davisgrimmpayne.com
**Attorneys for Plaintiff Northshore Sheet Metal, Inc.**

*PLAINTIFF'S REPLY FOR TRO* - Page 13
Case No. 15-cv-01349 MJP

**DAVIS GRIMM PAYNE & MARRA**
701 Fifth Avenue, Suite 4040
Seattle, WA 98104
Ph. (206) 447-0182 • Fax: (206) 622-9927

# CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of August, 2015, I electronically filed the foregoing **Plaintiff's *REPLY* for a Temporary Restraining Order** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Mr. Daniel Hutzenbiler
Robblee Detwiler & Black
2101 Fourth Avenue, Suite 1000
Seattle, WA 98121-2317
dhutzenbiler@unionattorneysnw.com

*[signature]*
Betsy E. Green, Legal Assistant to
Attorneys for Northshore Sheet Metal Inc.
E-mail: bgreen@davisgrimmpayne.com

*PLAINTIFF'S REPLY FOR TRO* - Page 14
Case No. 15-cv-01349 MJP

**DAVIS GRIMM PAYNE & MARRA**
701 Fifth Avenue, Suite 4040
Seattle, WA 98104
Ph. (206) 447-0182 • Fax: (206) 622-9927