UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NORTHSHORE SHEET METAL INC.,<br><br>Plaintiff,<br><br>v.<br><br>SHEET METAL WORKERS INTERNATIONAL ASSOCIATION, LOCAL 66,<br><br>Defendant. | CASE NO. C15-1349 MJP<br><br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER |

THIS MATTER comes before the Court on Plaintiff Northshore Sheet Metal, Inc.'s Motion for Temporary Restraining Order. (Dkt. No. 3.) The Court reviewed the motion, Defendant Sheet Metal Workers International Association, Local 66's response, (Dkt. No. 9), and the related record. The Court heard oral argument from the parties on September 2, 2015. (Dkt. No. 18.) The Court GRANTS in part and DENIES in part Plaintiff's Motion.

## Background

Plaintiff Northshore Sheet Metal, Inc. ("Northshore") and Defendant Sheet Metal Workers International Association, Local 66 ("Local 66") have been parties to a collective

bargaining agreement for many years. (Dkt. No. 9 at 1.) On January 12, 2015, the Parties executed a settlement agreement ("Settlement Agreement"). (Dkt. No. 4-2.) The Settlement Agreement was the culmination of a lengthy labor dispute between the Parties. (Dkt. No. 3 at 6.) As a part of the Settlement Agreement, the Parties entered into a collective bargaining agreement which would remain in effect from June 1, 2012 through May 31, 2015 ("Successor CBA"). (Dkt. No. 4-2 at 4.)

Section 3.5 of the Settlement Agreement provides:

> For a period of 180 days after the Agreement's Effective Date, a Company Employee may demonstrate that he/she did not receive their total wage scale (wages, plus benefits) either as scheduled, or in an equivalent manner. This includes a total combination of wages, pension contributions, health and welfare payments, reduction of NWDC withholding, vacation, or overpayment on a check. The Company will promptly make up the difference to the employee. The Company will not be responsible for any additional payment obligations to a Plan. The parties agree that a dispute over this provision is subject to the dispute resolution clause of this Settlement Agreement.

(Id. at 6.) The dispute resolution clause of the Settlement Agreement provides "[i]f there is a dispute over the meaning, interpretation, or enforcement of this Settlement Agreement, the Parties agree to mediate said dispute within a reasonable period of time; if the dispute is not resolved in mediation, the Parties agree to be bound by the arbitration procedures found in Article X, Sections 2 and 3 of the Successor CBA." (Id. at 10.)

On July 9, 2015, Local 66 sent Northshore a letter containing a list of employee names pursuant to Section 3.5 of the Settlement Agreement and requested that Northshore pay the employees monies owed. (Dkt. No. 5-1 at 2.) The 180-day period to claim additional money under Section 3.5 of the Settlement Agreement expired on July 11, 2015. On July 13, 2015, Northshore sought additional information from Local 66 regarding Local 66's claim that certain

ORDER GRANTING IN PART AND DENYING IN
PART PLAINTIFF'S MOTION FOR TEMPORARY
RESTRAINING ORDER- 2

1  employees had not been paid.  (Dkt. No. 5-2 at 2.)  On July 20, 2015, Local 66 provided

2  Northshore with a spreadsheet outlining the amounts owed to the employees listed in Local 66's

3  July 9 letter.  (Dkt. No. 5-3 at 2.)  On July 28, 2015, Northshore sought additional information

4  from Local 66 regarding the spreadsheet calculations.  (Dkt. No. 5-4 at 2.)  Local 66 did not

5  respond to Northshore's request for additional information.

6       Since May 2015, Northshore and Local 66 have been bargaining over a new collective

7  bargaining agreement but have been unable to reach an agreement.  (Dkt. No. 10 at 2.)  On

8  August 10, 2015, Local 66 held a meeting with its membership to discuss a potential strike.  (Id.)

9  The issues discussed at the meeting included Northshore's refusal to agree to language regarding

10 union stewards, its refusal to agree to language relating to its responsibilities as a union

11 contractor when traveling to other geographic areas, and its failure to pay fringe benefits.  (Id.)

12 The membership voted to authorize the strike.  (Id.)  Northshore learned about the strike on

13 August 10th.  (Dkt. No. 4 at 3.)  On August 20, 2015, Local 66 engaged in a strike at

14 Northshore's main office and picketed at construction sites where Northshore had a contract to

15 perform work.  (Id.)

16      Northshore and Local 66 exchanged correspondence regarding Local 66's obligation to

17 arbitrate the dispute over fringe benefits, but Local 66 denied it had such an obligation.  (See

18 Dkt. Nos. 5-6, 5-8, 5-9.)

19      Northshore filed an Ex Parte Motion for Temporary Restraining Order on August 24,

20 2015 seeking to enjoin Local 66's strike in its entirety on the grounds that the strike violates the

21 no-strike provisions of the Parties' agreements.  (Dkt. No. 3.)  That same day, the Court issued

22 an order declining to rule on Northshore's Motion ex parte and ordering Northshore to serve

23 Local 66 with its Motion and Complaint.  (Dkt. No. 7.)  The Court's Order also set a briefing

24

ORDER GRANTING IN PART AND DENYING IN
PART PLAINTIFF'S MOTION FOR TEMPORARY
RESTRAINING ORDER- 3

schedule on Northshore's Motion, allowing Local 66 an opportunity to respond to the Motion and explaining that the Court would hold a hearing on the motion. (Id.) On September 2, 2015, the Court held a hearing on Northshore's Motion. (Dkt. No. 18.)

## Discussion

### A. Legal Standard

In <u>Boys Markets, Inc. v. Retail Clerk's Union, Local 770</u>, 398 U.S. 235 (1970), the Supreme Court held that federal district courts have the power, pursuant to Section 301 of the Labor Management Relations Act ("LMRA"), to enjoin strikes in contravention of a mandatory arbitration agreement, in spite of the anti-injunction provisions of the Norris-LaGuardia Act. A district court can issue an injunction against a strike and order that arbitration proceed if the following conditions are met: (1) there is a mandatory dispute resolution procedure in a collective bargaining agreement; (2) the underlying dispute is subject to that mandatory dispute resolution procedure, see <u>Buffalo Forge Co. v. United Steelworkers</u>, 428 U.S. 397 (1976); (3) there is a no-strike provision in the agreement; and (4) the traditional requirements of equity—irreparable harm and a balance of hardships—are satisfied. <u>Boys Markets</u>, 398 U.S. at 254.

### B. Northshore's Motion

The Settlement Agreement contains an express provision that provides that disputes arising under Section 3.5 will be resolved in accordance with the Settlement Agreement's mandatory dispute resolution procedure. (Dkt. No. 4-2 at 6.) This procedure provides for mediation and, if the dispute is not resolved by mediation, then for arbitration in accordance with the dispute resolution clause of the Successor CBA. (Id. at 10.)

The dispute regarding fringe benefits is subject to the mandatory dispute resolution procedure. Local 66 argues the fringe benefits dispute is not subject to the mandatory dispute

resolution procedure because the dispute arose after the Successor CBA expired. (Dkt. No. 9 at 6–7.) However, Local 66's right to the fringe benefits accrued under the Settlement Agreement and Successor CBA, both of which contain a mandatory dispute resolution procedure. Therefore, even if the dispute regarding fringe benefits arose after the Successor CBA expired, Local 66 is still bound by the mandatory dispute resolution procedures in the Settlement Agreement and CBA. See Litton Fin. Printing Div. v. NLRB, 501 U.S. 190, 205–06 (1991).

There is no express no-strike provision in the Settlement Agreement or the Successor CBA. (Dkt. No. 4-2.) However, "injunctive relief may also be granted on the basis of an implied undertaking not to strike." Gateway Coal Co. v. United Mine Workers of America, 414 U.S. 368, 381 (1974). In Teamsters Local 174 v. Lucas Flour Co., 369 U.S. 95 (1962), the Supreme Court held that a contractual commitment to submit disputes to final and binding arbitration gives rise to an implied obligation not to strike over such disputes. Here, the mandatory dispute resolution procedures in the Settlement Agreement and Successor CBA give rise to an implied agreement not to strike over fringe benefits.

However, the equities favor the issuance of a more limited injunction than Northshore is seeking. Northshore bargained for mandatory dispute resolution in the event a dispute arose over fringe benefits owed under the Settlement Agreement and the Successor CBA. (Dkt. No. 4-2 at 6.) Striking about the fringe benefits dispute deprives Northshore of the benefit of this bargain and negatively affects its ability to complete projects and its goodwill. (Dkt. No. 4 at 3–4.) However, enjoining any and all strike activity would be unfair to Local 66, because it did not agree to arbitrate any and all disputes with Northshore. See Donovan Construction Co. v. Construction Laborers Union, Local 383, 533 F.2d 481, 485 (9th Cir. 1976) (". . . each restraint

imposed by a Boys Markets injunction must be grounded on a finding by the District Court that the activity restrained is a proper subject for injunctive relief despite the Norris-LaGuardia Act.")

In light of these considerations, the Court GRANTS in part and DENIES in part Northshore's Motion for Temporary Restraining Order.

IT IS, HEREBY, ORDERED that Local 66 is enjoined from engaging in strike activity related to fringe benefits owed under the Settlement Agreement and Successor CBA. The Court does not enjoin strike activity that is not related to fringe benefits owed under the Settlement Agreement and Successor CBA.

FURTHER ORDERED, that the Parties are to proceed to mediation and arbitration on the issue of fringe benefits owed under the Settlement Agreement and Successor CBA in accordance with the mandatory dispute resolution provisions of those agreements.

This Temporary Restraining Order will remain in effect for a period of fourteen (14) days. No bond will be required. Northshore may apply to the Court for an extension based on a showing of good cause.

SO ORDERED.

Dated this 4th day of September, 2015.

Marsha J. Pechman
United States District Judge