Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| NORTHSHORE SHEET METAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> SHEET METAL WORKERS INTERNATIONAL ASSOCIATION, LOCAL 66, <br><br> Defendant. | Case No. 2:15-cv-01349 MJP <br><br> ***PLAINTIFF'S FIRST AMENDED COMPLAINT*** <br><br> **JURY DEMAND** |

Plaintiff complains, and for its cause of action against Defendant, alleges as follows:

I.      **JURISDICTION AND VENUE**

1.      Plaintiff claims for relief, pursuant to Sections 301 and 303 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. §§ 185(c), 187(b) and the Court having jurisdiction thereunder.

2.      Venue is proper in this Court because the matter giving rise to this complaint affects a labor agreement negotiated within this judicial district, and has impact on

*PLAINTIFF'S FIRST AMENDED COMPLAINT*
- Page 1
CASE NO. 15-cv-01349 MJP

**DAVIS GRIMM PAYNE & MARRA**
701 Fifth Avenue, Suite 4040
Seattle, WA 98104
Ph. (206) 447-0182 • Fax: (206) 622-9927

employees within judicial district, 29 U.S.C. § 185(c). Venue and jurisdiction are also proper under 29 U.S.C. § 187(b).

## II.   PARTIES

3. Plaintiff Northshore Sheet Metal, Inc. ("Plaintiff" or "Northshore") is an employer in the sheet metal industry. Northshore is a Washington corporation doing business in Snohomish County, Washington. Northshore is a corporation engaged in an industry affecting commerce as defined by the LMRA.

4. Defendant Sheet Metal Workers International Association, Local 66 ("Defendant" or "Union") is a labor organization with its principal place of business in Snohomish County, Washington. It represents collective bargaining unit persons engaged in the construction industry. That industry affects commerce within the meaning of the National Labor Relations Act, 29 U.S.C. §§ 142(1), 152(5).

## III.   FACTUAL ALLEGATIONS

5. The Union is the exclusive collective bargaining representative of certain classifications of Northshore employees for King, Snohomish, Island, Kitsap, Clallam, Jefferson, Mason, Pierce, Thurston, Lewis, Grays Harbor, Cowlitz, Pacific and Wahkiakum Counties in the State of Washington.

6. Northshore and the Union are parties to an expired collective bargaining agreement dated June 1, 2009 through May 31, 2012. The collective bargaining agreement contains a final and binding arbitration procedure for labor disputes. This arbitration procedure is found in the Parties' Letter of Understanding, which is an addendum to the Standard Form Union Agreement (referred to as the "LOU").

*PLAINTIFF'S FIRST AMENDED COMPLAINT*
- Page 2
CASE NO. 15-cv-01349 MJP

**DAVIS GRIMM PAYNE & MARRA**
701 Fifth Avenue, Suite 4040
Seattle, WA 98104
Ph. (206) 447-0182 • Fax: (206) 622-9927

7. The expired collective bargaining agreement was the result of a settlement. That settlement was memorialized in a Settlement Agreement, executed on January 12, 2015 ("Settlement Agreement"). The Settlement Agreement ended a lengthy and disruptive labor dispute that had lasted approximately 2 ½ years.

8. The Settlement Agreement was intended to resolve all present and past issues between Northshore, the Union, and the local Trust Funds associated with the Union.

9. The Settlement Agreement contained a dispute resolution clause. Northshore and the Union agreed to mediate any disputes over the remaining, interpretative, or enforcement matters of the Settlement Agreement; if the dispute was not resolved in mediation, Northshore and the Union agreed to be bound by the arbitration procedure in the LOU.

10. Section 3.5 of the Settlement Agreement provides:

> For a period of 180 days after the *Agreement's Effective Date*, a *Company* employee may demonstrate that he/she did not receive their total wage scale (wages, plus benefits) either as scheduled, or in an equivalent manner. This includes a total combination of wages, pension contributions, health and welfare payments, reduction of NWDC withholding, vacation, or overpayment on a check. The *Company* will promptly make up the difference to the employee. The Company will not be responsible for any additional payment obligations to a *Plan*. <u>The parties agree that a dispute over this provision is subject to the dispute resolution clause of this *Settlement Agreement*.</u>

11. The dispute resolution clause in the Settlement Agreement binds the Parties to that Agreement to the compulsory final and binding arbitration mechanism found in the LOU.

*PLAINTIFF'S FIRST AMENDED COMPLAINT* - Page 3
CASE NO. 15-cv-01349 MJP

**DAVIS GRIMM PAYNE & MARRA**
701 Fifth Avenue, Suite 4040
Seattle, WA 98104
Ph. (206) 447-0182 • Fax: (206) 622-9927

*PLAINTIFF'S FIRST AMENDED COMPLAINT* - Page 3
CASE NO. 15-cv-01349 MJP

**DAVIS GRIMM PAYNE & MARRA**
701 Fifth Avenue, Suite 4040
Seattle, WA 98104
Ph. (206) 447-0182 • Fax: (206) 622-9927

12. On July 9, 2015, the last business day before the 180 days expired, the Union, by and through its attorney, presented a list of names and sought monies owed, pursuant to §3.5 of the Settlement Agreement. The request only contained a list of names.

13. On July 13, 2015, Northshore, by and through its attorney, sought information from the Union. This request was provided so Northshore could properly determine if the employees listed were owed any money under the terms of the Settlement Agreement; and if so, how much.

14. On July 20, 2015, the Union, by and through its attorney, provided a spreadsheet. The Union provided no supporting documentation. Nor did the Union provide any explanation as to how the spreadsheet was created, nor why certain information was missing.

15. On July 28, 2015, Northshore, by and through its attorney, again sought the information related to its determination as to whether any employees were owed money pursuant to §3.5 of the Settlement Agreement; and if so, how much. The Union still has not provided that information.

16. The Parties are also in the process of bargaining a new successor labor agreement. The Parties have already reached a tentative agreement on wages and benefits for the successor agreement.

17. On August 7, Northshore and the Union met for bargaining. The Union had indicated that a strike was possible. At the end of the August 7, 2015 bargaining session, the Union claimed that one of the unresolved issues was the payment of "fringe benefits" as required by §3.5 of the Settlement Agreement.

*PLAINTIFF'S FIRST AMENDED COMPLAINT*
- Page 4
CASE NO. 15-cv-01349 MJP

**DAVIS GRIMM PAYNE & MARRA**
701 Fifth Avenue, Suite 4040
Seattle, WA 98104
Ph. (206) 447-0182 • Fax: (206) 622-9927

18.     On information and belief, on August 10, 2015, the Union held a strike authorization vote as it related to Northshore. On information and belief, one of the issues discussed by Tim Carter was that Northshore still owed "fringe benefits;" he later stated that the Union needed to make an example of Northshore.

19.     On August 17, 2015, Northshore, by and through its attorney, received a letter (dated August 13, 2015) from the Union's attorney. The letter was a response to Northshore's prior August 7, 2015 bargaining proposal. The Union referenced the "fringe benefits" allegedly owed, pursuant to §3.5 of the Settlement Agreement.

20.     On August 19, 2015, the Union was informed that Northshore would not be working on the Bellevue Square South Commons, Alley 111 and Meydenbauer Convention Center job sites.

21.     On August 20, 2015, the Union engaged in a strike against Northshore Sheet Metal.

22.     On August 20, 2015 and several days thereafter, the Union engaged in a strike action at the Bellevue South Commons site, even though the Union knew that Northshore was not present. The Union was informed that Northshore would not be working on the Bellevue South Commons job site. Northshore is a subcontractor to GLY Construction on this job site.

23.     On August 20, 2015, the Union, by and through its agents, was informed that Northshore would not be working on the Chambers Creek Waste Water Treatment Plant job site for an indefinite period of time. On that same and for several days thereafter, the Union, by and through its agents, engaged in picketing on that job site, even though the Union knew

PLAINTIFF'S FIRST AMENDED COMPLAINT
- Page 5
CASE NO. 15-cv-01349 MJP

DAVIS GRIMM PAYNE & MARRA
701 Fifth Avenue, Suite 4040
Seattle, WA  98104
Ph. (206) 447-0182 • Fax: (206) 622-9927

that Northshore was not present. Northshore is a subcontractor to Mortenson Construction on this job site.

24. On information and belief, the Chambers Creek Waste Water Treatment Plant has used a dual gate system, and the Union, by and through its agents, has unlawfully engaged in picketing action of the neutral gate.

25. On information and belief, the Union, by and through its agents, has engaged in unlawful picketing at the Meridian Health Center and other job sites when Northshore was not present. Northshore is a subcontractor to Lease Crutcher Lewis on the Meridian Health Center job site.

26. On information and belief, the Union's objective in picketing the job sites is to force the general contractors, clients, and other businesses to cease doing business with Northshore.

27. Since August 20, 2015, the strikers have had pickets at Northshore's facility, as well as construction sites where Northshore was contracted to perform work. The purpose of the pickets are to force Mortenson Construction, GLY Construction, Lease Crutcher Lewis, and the other general contractors and customers, to cease doing business with Northshore, and/or force Northshore to enter into an illegal agreement with the Union in violation of the NLRA.

28. Northshore's bargaining unit employees proceeded to engage in a concentrated work stoppage and picketed Northshore, and its constructions sites. This work stoppage has continued unabated.

29. General Contractors, with whom Northshore is performing work, have demanded that Northshore not perform work on their job sites while the strike is ongoing.

*PLAINTIFF'S FIRST AMENDED COMPLAINT* - Page 6
CASE NO. 15-cv-01349 MJP

**DAVIS GRIMM PAYNE & MARRA**
701 Fifth Avenue, Suite 4040
Seattle, WA 98104
Ph. (206) 447-0182 • Fax: (206) 622-9927

Mortenson Construction, GLY Construction, Lease Crutcher Lewis, and the other general contractors, are neutral employers. These entities are engaged in commerce or in an industry affecting commerce. 29 U.S.C. § 152(7).

30. Upon information and belief from October 20, 2015 to the present, the Union, by and through its agents, representatives, and/or members, has unlawfully engaged in, induced or encouraged neutral employers, including but not limited to contractors, customers and clients, through threats, demonstrations or picketing to force the neutral employers to cease doing business with Northshore. These contractors, customers, and clients are engaged in commerce or in an industry affecting commerce, pursuant to 29 U.S.C. § 152(7).

31. On information and belief from October 20, 2015 to the present, the Union, by and through its agents, has communicated threats to neutral employers that they may be the subject of a picket should they continue to do business with Northshore.

32. The Union has unlawfully engaged in secondary activity against neutral employers by unlawfully threatening secondary pressure unless those neutral employers immediately cease doing business with Northshore in violation of Section 8(b)(4) of the NLRA.

33. The Union has engaged in strike activity on job sites, whether Northshore employees are present and working, or not present and working.

PLAINTIFF'S FIRST AMENDED COMPLAINT
- Page 7
CASE NO. 15-cv-01349 MJP

DAVIS GRIMM PAYNE & MARRA
701 Fifth Avenue, Suite 4040
Seattle, WA 98104
Ph. (206) 447-0182 • Fax: (206) 622-9927

34. The strikers carried signs, stating:

```
NORTHSHORE

PAY

MY

BENEFITS!

LABOR DISPUTE
```

35. The "fringe benefits" referred to on the pickets involves the Union's allegations surrounding §3.5 of the Settlement Agreement.

36. The dispute over §3.5 of the Settlement Agreement was one of the purposes of the Union's strike.

### IV.   CAUSE OF ACTION

### BREACH OF LABOR AGREEMENT, 29 U.S.C. § 185

37. Plaintiff realleges paragraphs 1 through 36 above.

38. The Union's strike breached the Union's contractual obligations not to strike. The Union has repudiated the labor agreements by engaging in this strike.

39. The Parties incorporated a dispute resolution method for resolving any questions over §3.5 of the Settlement Agreement, which is contained in the Parties' addendum LOU to the Standard Form Union Agreement. The LOU contains the Parties' final and binding arbitration provision.

40. Section 301 of the LMRA, 29 U.S.C. § 185, governs contracts between a labor organization and an employer that "are significant to the maintenance of labor peace

*PLAINTIFF'S FIRST AMENDED COMPLAINT*
- Page 8
CASE NO. 15-cv-01349 MJP

**DAVIS GRIMM PAYNE & MARRA**
701 Fifth Avenue, Suite 4040
Seattle, WA 98104
Ph. (206) 447-0182 • Fax: (206) 622-9927

between them." *Retail Clerks Int'l Assoc., Local 128 v. Lion Dry Goods*, 369 U.S. 17, 28 (1962).

41. The Settlement Agreement was intended to resolve a contentious labor dispute between the parties, including the resolution of a successor labor agreement, federal litigation, federal administrative action, and prior unlawful strikes by the Union. The Settlement Agreement arose under a dispute related to the parties' collective bargaining agreement.

42. Section 301 empowers (and requires) the courts to create a federal body of common law to govern contracts between the union and employer. *Textile Workers Union of America v. Lincoln Mills of Alabama*, 353 U.S. 448, 457-459 (1957).

43. As part of that federal common law, the courts have determined that the final and binding labor arbitration is the *quid pro quo* for an agreement not to strike. *Id.* ("Plainly the agreement to arbitrate grievance disputes is the quid pro quo for an agreement not to strike.").

44. The agreement not to strike is implied in labor agreements when there is a final and binding labor arbitration clause. The two clauses have a coterminous relationship. *Gateway Coal Co. v. United Mine Workers of America*, 141 U.S. 368, 382 (1974).

45. By striking with the Union's stated purpose, the Union has breached its contractual obligation not to strike.

**SECONDARY BOYCOTT VIOLATIONS, 29 U.S.C. § 187**

46. Plaintiff realleges and incorporates the allegations contained in paragraphs 1 through 45 above as if fully set forth herein.

*PLAINTIFF'S FIRST AMENDED COMPLAINT*
- Page 9
CASE NO. 15-cv-01349 MJP

DAVIS GRIMM PAYNE & MARRA
701 Fifth Avenue, Suite 4040
Seattle, WA 98104
Ph. (206) 447-0182 • Fax: (206) 622-9927

47. Under the NLRA, Congress protected certain conduct, prohibited certain conduct, and left other conduct to the free play of the parties' respective economic forces. In deciding what conduct was prohibited, Congress struck a balance between labor and management in their federal collective bargaining relationships.

48. Section 8(b)(4)(ii)(B) of the NLRA, 29 U.S.C. 158(b)(4)(ii)(B), makes it an unfair labor practice for a labor organization or its agents to "threaten, coerce, or restrain" any person engaged in commerce or in an industry affecting commerce where an object thereof is "forcing or requiring any person to," among other things, "cease doing business with any other person." Section 303 of the LMRA, 29 U.S.C. § 187, permits civil actions seeking damages for violations of Section 8(b)(4) of the NLRA.

49. The Union has engaged in a campaign to pressure neutral employers to cease doing business with Northshore and/or refuse to use Northshore's product or perform services for Northshore in violation of Section 8(b)(4) of the NLRA. The Union has threated neutral employers, including, but not limited to, Mortenson Construction, GLY Construction, Lease Crutcher Lewis, and other persons, with picketing of their jobsites, and an object of this picketing threat has been to force or require those same neutral employers to cease handling or otherwise dealing in the products of, and to cease doing business with Northshore.

50. The general contractors, clients, customers, and/or businesses that Northshore works with are neutral employers in the dispute between the Union and Northshore. These neutral employers are engaged in commerce or industry affecting commerce, pursuant to 29 U.S.C. § 152(7).

*PLAINTIFF'S FIRST AMENDED COMPLAINT*
- Page 10
CASE NO. 15-cv-01349 MJP

**DAVIS GRIMM PAYNE & MARRA**
701 Fifth Avenue, Suite 4040
Seattle, WA 98104
Ph. (206) 447-0182 • Fax: (206) 622-9927

51. Upon information and belief, the Union's leadership, as part of their corporate campaign, orchestrated, authorized, and instructed members to engage in, or threaten to engage in, demonstrations and picketing described herein resulting in the misconduct directed at Northshore from October 20, 2015 to the present. The Union's threats, coercion and restraint of neutral employers, including but not limited to Mortensen Construction, GLY Construction, Lease Crutcher Lewis, was for an unlawful object under § 8(b)(4) of the NLRA, including but not limited to pressuring these neutral employers to cease doing business with Northshore.

52. The Union's threatening, coercive, and restraining behavior was for an unlawful purpose, constituting illegal secondary activity, violating § 8(b)(4) of the NLRA, 29 U.S.C. § 158(b)(4), and consequently violating § 303 of the LMRA, 29 U.S.C. § 187.

53. As a proximate and direct result of the Union's coercive and illegal secondary conduct, Northshore has sustained and continues to sustain damages in an amount to be determined.

## V. DEMAND FOR JURY TRIAL

54. Please take note that Plaintiff demands a trial by jury pursuant to Fed. R. Civ. P. 38(b) and Local Rule 38.

## VI. IRREPARABLE HARM TO PLAINTIFF WITH NO ADEQUATE REMEDY

55. The Union's strike has resulted in immediate and irreparable injury to Plaintiff. The strike has caused Northshore to be kicked off jobs, delayed jobs, and threatens contractual obligations.

*PLAINTIFF'S FIRST AMENDED COMPLAINT* - Page 11
CASE NO. 15-cv-01349 MJP

**DAVIS GRIMM PAYNE & MARRA**
701 Fifth Avenue, Suite 4040
Seattle, WA 98104
Ph. (206) 447-0182 • Fax: (206) 622-9927

56. Continuation of the strike described above will seriously harm Plaintiff, and will continue to interfere with Plaintiff's operations. Plaintiff may lose contracts, revenue, as well as prospective construction contracts, due to the Defendant's breach.

57. There is no adequate remedy under the law, except to issue an injunction and force Defendant to proceed through the agreed-upon contractual procedures.

58. Unless the conduct is immediately enjoined and restrained, grave and irreparable injury and damage will unavoidably result to Plaintiff in that Plaintiff will not have access to, and sole and peaceful use of, its property and its various construction sites and Plaintiff may lose revenue and present and prospective customers.

59. Plaintiff has no adequate remedy at law. The consequences of Defendant's breach as set forth above will cause serious and irreparable harm to Plaintiff financially, and other substantial harm. The amount of monetary suffered by Plaintiff will difficult to fully ascertain and in any event, would be an inadequate remedy for the harm which Plaintiff is suffering and will continue to suffer so long as the Defendant's activities are allowed to continue.

## VII.   PRAYER FOR RELIEF

1. An Order enjoining Defendant from continuing its strike activity, or engaging in unlawful secondary activity;

2. An Order requiring Defendant to adhere to adhere to the dispute resolution procedures in the labor agreements that culminates with final and binding arbitration.

*PLAINTIFF'S FIRST AMENDED COMPLAINT*
- Page 12
CASE NO. 15-cv-01349 MJP

**DAVIS GRIMM PAYNE & MARRA**
701 Fifth Avenue, Suite 4040
Seattle, WA  98104
Ph. (206) 447-0182 • Fax: (206) 622-9927

3.   Actual and compensatory damages due based on the Union's contractual repudiation, and Plaintiff's illegal secondary actions in violation of 8(b)(4) of the NLRA, 29 U.S.C. 29 U.S.C. § 187.

4.   Monetary damages, extraordinary expenses, attorney fees, costs, pre- and post-judgment interest due based on the Union's contractual repudiation and illegal secondary actions.

5.   For such other and further relief as the Court finds just and equitable.

Respectfully Submitted this 28th day of September, 2015.

By: /s/ _____
Christopher L. Hilgenfeld, WSBA #36037
Davis Grimm Payne & Marra
701 5th Avenue, Suite 4040
Seattle, WA 98104-7097
Ph. (206) 447-0182
Fax: (206) 622-9927
Email: chilgenfeld@davisgrimmpayne.com
**Attorneys for Plaintiff**
**Northshore Sheet Metal, Inc.**

*PLAINTIFF'S FIRST AMENDED COMPLAINT* - Page 13
CASE NO. 15-cv-01349 MJP

**DAVIS GRIMM PAYNE & MARRA**
701 Fifth Avenue, Suite 4040
Seattle, WA 98104
Ph. (206) 447-0182 • Fax: (206) 622-9927

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of September, 2015, I electronically filed the foregoing *PLAINTIFF'S FIRST AMENDED COMPLAINT* with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Daniel Hutzenbiler
Robblee Detwiler & Black
2101 Fourth Avenue, Suite 1000
Seattle, WA 98121-2317
dhutzenbiler@unionattorneysnw.com

*Betsy E. Green*
Betsy E. Green, Legal Assistant to
Attorneys for Northshore Sheet Metal Inc.
E-mail: bgreen@davisgrimmpayne.com

*PLAINTIFF'S FIRST AMENDED COMPLAINT*
- Page 14
CASE NO. 15-cv-01349 MJP

**DAVIS GRIMM PAYNE & MARRA**
701 Fifth Avenue, Suite 4040
Seattle, WA 98104
Ph. (206) 447-0182 • Fax: (206) 622-9927