**HONORABLE MARSHA J. PECHMAN**

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON AT SEATTLE

NORTHSHORE SHEET METAL, INC.,

     Plaintiff,

  v.

SHEET METAL WORKERS
INTERNATIONAL ASSOCIATION,
LOCAL 66,

     Defendant.

No. 2:15-CV-01349 MJP

**UNION'S MOTION TO COMPEL
NORTHSHORE**

**NOTED ON MOTION CALENDAR:** April 29, 2016

UNION'S MOTION TO COMPEL NORTHSHORE
 2:15-cv-01349 MJP - 1

LAW OFFICES OF
Robblee Detwiler & Black
================================
2101 FOURTH AVENUE, SUITE 1000
SEATTLE, WA 98121
(206) 467.6700·· FAX (206) 467-7589

**RELIEF REQUESTED**

Nearly eight (8) months into this litigation, Sheet Metal Workers International Association, Local 66 ("Union"), still has no idea which projects Northshore Sheet Metal, Inc. ("Northshore") is suing on.  The Union's discovery to Northshore sought to glean this imperative information.  The requests were designed to learn: (1) which projects are at issue, (2) what documents support those assertions, and (3) who are the knowledgeable witnesses.  Despite these simple discovery requests, Northshore largely refused to respond.  Northshore left nearly all nineteen (19) interrogatories unanswered and produced a mere thirty-eight (38) pages of documents.  Rather than explain what projects are within the universe of the Complaint, Northshore objected and instructed the Union to look elsewhere, namely to non-parties.

**STATEMENT OF FACTS**

The Union sent its Second Set of Interrogatories and Requests for Production to Northshore via same-day legal messenger on February 8, 2016. (Medlin Decl. ¶ 2, Ex. 1).  On March 11, 2016, the Union's counsel emailed Northshore after no response had been furnished, requesting a meet and confer. (Medlin Decl. ¶ 3, Ex. 2).  Later that day, Northshore's response arrived in the mail. (Medlin Decl. ¶ 4).  Along with the response, Northshore furnished thirty-eight (38) pages of documents and twenty-four (24) photos. (Id.).  Northshore objected to every interrogatory and provided minimal detailed responses. (Medlin Decl. ¶ 4, Ex. 3).

The Union wrote Northshore on March 17, 2016 explaining its dismay with the response and again requested a meet and confer. (Medlin Decl. ¶ 5, Ex. 4).  Receiving no reply, the Union's counsel called and left a voice message on March 18, 2016. (Medlin Decl. ¶ 6, Ex. 5).  Northshore's counsel replied the next day via a faxed letter that he could not confer. (Medlin Decl. ¶ 7, Ex. 6).  The

LAW OFFICES OF
Robblee Detwiler & Black
=============================
2101 FOURTH AVENUE, SUITE 1000
SEATTLE, WA 98121
(206) 467.6700·· FAX (206) 467-7589

Union's counsel reached out to Northshore again on March 27, 2016, to resolve the discovery and confer. (Medlin Decl. ¶ 8, Ex. 5).

In response, Northshore provided a written explanation for its lack of discovery, yet persisted in its resistance to meeting and conferring. (Medlin Decl. ¶ 9, Ex. 7).   Again on March 28, 2016, the Union asked for a meet and confer. (Medlin Decl. ¶ 10, Ex. 5).  Northshore answered that it was only available to confer on Sunday, April 3rd. (Medlin Decl. ¶ 11).  Undaunted, the Union agreed. (Id.). The parties conferred; however, they were at impasse on attaining a resolution. (Id.).  Post-conference, Northshore has not provided additional documents or responses. (Medlin Decl. ¶ 12). The Union still lacks basic information on this lawsuit, such as the projects at issue, damage documents, and the identity of knowledgeable witnesses. (Medlin Decl. ¶¶ 13-15).

## ARGUMENT

### I.   THE UNION COMPLIED WITH LCR 37 IN ATTEMPTING TO REACH A RESOLUTION WITHOUT COURT INTERVENTION.

The Union made repeated attempts to comply with LCR 37 in holding a LCR 26(f) "meet and confer" conference. (Medlin Decl. ¶¶ 3, 5, 6, 8, 10).  LCR 37(a)(1) mandates:

> Any motion for an order compelling disclosure or discovery must include a certification, in the motion or in a declaration or affidavit, that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to resolve the dispute without court action.

"[A] motion to compel discovery responses 'must include a certification'" that the parties have "conferred." <u>Rogers v. Giurbino</u>, 288 F.R.D. 469, 477 (S.D. Cal. 2012).  The Union worked relentlessly for three weeks to hold a meet and confer. (Medlin Decl. ¶ 3, Ex. 1).  The parties finally conferred on Sunday, April 3, 2016. (Medlin Decl. ¶ 11).  However, despite having a phone conference, the parties could not reach a resolution.  Northshore has persisted in refusing to provide

UNION'S MOTION TO COMPEL NORTHSHORE
 2:15-cv-01349 MJP - 3

LAW OFFICES OF
Robblee Detwiler & Black
==============================
2101 FOURTH AVENUE, SUITE 1000
SEATTLE, WA 98121
(206) 467.6700·· FAX (206) 467-7589

information until the Court decides its own Motion to Compel. (Dkt. #52, 54) (Medlin Decl. ¶ 9, Ex. 7).

## II.   NORTHSHORE WAIVED ITS OBJECTIONS TO THE DISCOVERY BECAUSE IT PROVIDED UNTIMELY REPONSES.

Northshore waived any objections by failing to timely respond to the Union's discovery.  A "responding party must serve its answers and any objections within 30 days after being served with interrogatories." FRCP 33(b)(2).   The same timeline applies for producing documents. FRCP 34(b)(2).  Importantly:

> [I]n the absence of an extension of time or good cause, the failure to object to interrogatories within the time fixed by Rule 33…constitutes a waiver of any objection. This is true even of an objection that the information sought is privileged.

Davis v. Fendler, 650 F.2d 1154, 1160 (9th Cir. 1981).  *See also* Coregis Ins. Co. v. Baratta & Fenerty, Ltd., 187 F.R.D. 528, 529 (E.D. Pa. 1999) (discussing waiver in the context of untimely responses and objections).  Here, the Union served its discovery on February 8, 2016 via same-day messenger. (Medlin Decl. ¶ 2, Ex. 1).  Northshore was to provide responses by March 9th since the discovery was not served by mail.  Northshore mailed the response on March 9th; however, the Union did not receive them until March 11th – two days late.  Northshore had not requested an extension nor did it notify the Union that it would be mailing a response.

Northshore cannot profess ignorance on discovery timelines.  In fact, Northshore chided the Union in its own Motion to Compel on this very issue.  Northshore wrote the Court:

> Discovery responses must be served 30 days following service of the requests. Fed. R. Civ. P. 32(b)(2). An additional 3 days are added if the discovery requests were served via mail. Fed. R. Civ. P. 6(d).

(Dkt. # 52, pg. 4). (emphasis added). Northshore went on to incorrectly accuse the Union of missing the deadline. (Id.).  Given Northshore's prior lecturing on timelines, it is difficult to fathom why it elected to disregard them.  Accordingly, Northshore's objections were waived.

LAW OFFICES OF
Robblee Detwiler & Black
==============================
2101 FOURTH AVENUE, SUITE 1000
SEATTLE, WA 98121
(206) 467.6700·· FAX (206) 467-7589

### III. NORTHSHORE HAS REFUSED TO RESPOND TO BASIC DISCOVERY REQUESTS. THE UNION HAS SOUGHT RELEVANT INFORMATION UNDERPINNING NORTHSHORE'S CLAIMS.

The Union solicited basic information relating to the projects at issue, persons with knowledge, and documents supporting damages. These discovery requests go to the heart of Northshore's asserted claims. FRCP 26 provides for broad discovery rights. The rule contemplates:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to information, the parties' resources…and whether the burden or expense of the proposed discovery outweighs its likely benefit.

FRCP 26(b)(1). "Relevant information for purposes of discovery is information 'reasonably calculated to lead to the discovery of admissible evidence." Surfvivor Media, Inc. v. Survivor Prods., 406 F.3d 625, 635 (9th Cir. 2005).[1] The party resisting discovery bears "the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." Cable & Computer Tech. v. Lockheed Saunders, 175 F.R.D. 646, 650 (C.D. Cal. 1997). Here, as noted below, Northshore refused to respond to the Union's interrogatories on the basis that it must await action by the Court on its own Motion to Compel. (Medlin Dec. ¶¶ 4, 9 Exs. 3, 7). Northshore further refused to produce all relevant documents – producing only thirty-eight (38) documents total. (Medlin Decl. ¶¶ 4-5; Exs. 3-4).

Because Northshore has balked at disclosing basic information, the Union has filed this motion. Critically, Northshore's Complaint declares that it was damaged by secondary boycott activity on "other job sites" and that "other general contractors" demanded they cease work.[2] (Dkt. #

---

[1] "[T]he purpose of discovery is to remove surprise from trial preparation so the parties obtain evidence necessary to evaluate and resolve their dispute. Toward this end, Rule 26(b) is liberally interpreted to permit wide-ranging discovery of all information reasonably calculated to lead to discovery of admissible evidence." Ragge v. MCA/Universal, 165 F.R.D. 601, 603-604 (C.D. Cal. 1995).

[2] Northshore specifically identified only four projects in its Complaint: Bellevue Square Commons (Dkt. # 24, ¶ 20), Meydenbauer Convention Center (Id.), Chambers Creek Waster Water (Dkt. # 24, ¶ 23), and Meredian Health Center (Dkt. # 24, ¶ 25). Northshore has never identified the "other projects" it claims to have been damaged upon. The Union's discovery requests specifically sought to elicit this critical information.

UNION'S MOTION TO COMPEL NORTHSHORE
2:15-cv-01349 MJP - 5

LAW OFFICES OF
Robblee Detwiler & Black
================================
2101 FOURTH AVENUE, SUITE 1000
SEATTLE, WA 98121
(206) 467.6700··FAX (206) 467-7589

24, ¶¶ 25, 29).  Northshore further alleged the Union "ha[d] threatened…other persons." (Dkt. # 24, ¶ 49).  The Union's discovery sought to elicit this information, namely: what are the "other sites," who are the "alleged persons threatened," and the general contractor identities.  Northshore, however, has refused to divulge this simple information. (Medlin Decl. ¶ 4, Ex 3).  Northshore will not identify the "other job sites" and the "other persons" who were struck and/or threatened.  The Court must compel Northshore to respond.

1. <u>NORTHSHORE SHOULD BE COMPELLED TO PRODUCE ALL PROJECT-RELATED INFORMATION AND DOCUMENTS.  THIS INCLUDES IDENTIFYING ALL PROJECTS AT ISSUE, ALLEGED THIRD-PARTY CONTRACTORS, PERSONS WITH RELEVANT KNOWLEDGE, AND DOCUMENTS UNDERPINNING THE CLAIMS.</u>
**(Interrogatory Nos. 2, 3, 4 and Requests for Production Nos. 7, 8, 9, 10)**

The fact that the parties are <u>eight</u> months into the litigation and Northshore has still not furnished a list of all projects at issue is troubling.  FRCP 26(b)(1) expressly provides a party the authority to discover information relating to a party's "claim or defense."  Northshore has made a claim for damages based upon alleged unlawful secondary activity on <u>various</u> projects. (Dkt. # 24, ¶¶ 20-25).  Northshore, however, has yet to identify all of those projects.  The Union is left to hypothesize on which projects are in dispute.

In its Complaint, Northshore expressly stated there are "other job sites" at issue and "other general contractors" and "persons" were threatened. (Complaint, Dkt. # 24, ¶¶ 25, 29, 49).  The Union requested that Northshore specifically identify all projects at issue (Interrogatory No. 2), the general contractors (Interrogatory No. 3), the Union's alleged illegal conduct (Interrogatory No. 4), and the supporting documents (RFP Nos. 7, 8, 9). (Medlin Decl. ¶ 2, Ex. 1, pp. 4-9).  Northshore merely identified three projects it listed in the Complaint and added:

> Northshore has been damaged on <u>more</u> projects than just the three identified by Defendant, and is compiling the comprehensive list of projects. Northshore will provide this list once the Court has determined the appropriate scope of this litigation and consistent with the Court's Scheduling Order.

UNION'S MOTION TO COMPEL NORTHSHORE
2:15-cv-01349 MJP - 6

LAW OFFICES OF
Robblee Detwiler & Black
===================================
2101 FOURTH AVENUE, SUITE 1000
SEATTLE, WA 98121
(206) 467.6700·· FAX (206) 467-7589

(Medlin Decl. ¶ 4, Ex. 3, pp. 4-5).  Despite directly acknowledging there are "more projects" at issue, Northshore will not reveal what they are (Interrogatory No. 4). (Id., p. 8).

The federal rules do not condone such refusals to respond.  "The party submitting the interrogatory is entitled to an answer to the interrogatory." <u>Oleson v. Kmart Corp.</u>, 175 F.R.D. 570, 572 (D. Kan. 1997).  Similarly, "[a] party may not defer answering or refuse to answer an interrogatory by suggesting that the information may be forthcoming." <u>Id</u>.  Here, Northshore did precisely that.  Rather than disclose the projects at issue, Northshore noted, "[t]o the extent Defendant will fully answer Plaintiff's discovery requests, this response should be deemed hereby amended to include answers and responses produced herein." (Medlin Decl. ¶ 4, Ex. 3. p. 8).  FRCP 37 (a)(4) counsels that "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond."

Northshore's response is utterly nonsensical.  Northshore must know the projects it claims to have been damaged upon, why it was damaged, what conduct caused the damage, when, and who has knowledge of those facts.  These are basic facts going to the underlying claims.[3]  There is no reason for Northshore to withhold this information pending a response from the Union.  The Court must compel Northshore to furnish complete and non-evasive answers to Interrogatories Nos. 2, 3, 4, and Request for Production Nos. 7, 8, 9, 10.

## 2. NORTHSHORE MUST PRODUCE INFORMATION RELATED TO LOST BUSINESS AND CANCELLED WORK.  THESE ARE FACTS GOING DIRECTLY TO NORTHSHORE'S CLAIMS FOR DAMAGES.
### (Interrogatory Nos. 5, 6 and Request for Production Nos. 11, 12)

Northshore has not fully responded to the Union's request for information on lost business and the persons with knowledge of those facts (Interrogatory Nos. 5, 6). (Medlin Decl. ¶ 4, Ex. 3).  Northshore has alleged claims for lost business and profits.  The Complaint alleges:

---

[3]    "By presenting to the court a pleading…an attorney or unrepresented party certifies that to the best of the person's knowledge…(3) the factual contentions have evidentiary support." FRCP 11(b)(3).

UNION'S MOTION TO COMPEL NORTHSHORE
2:15-cv-01349 MJP - 7

LAW OFFICES OF
Robblee Detwiler & Black
===============================
2101 FOURTH AVENUE, SUITE 1000
SEATTLE, WA 98121
(206) 467.6700·· FAX (206) 467-7589

The Union has engaged in a campaign to pressure neutral employers to cease doing business with Northshore…to cease handling or otherwise dealing in the products of, and to cease doing business with Northshore.

(Dkt. #24, ¶ 49).   Northshore has further alleged it "sustained damages in an amount to be determined." (Dkt. # 24, ¶ 53).  The Union requested that Northshore disclose the cancelled projects and lost business. (Medlin Decl. ¶ 4, Ex. 3, Interrogatory No. 5).  Ancillary to this, the Union requested the names of the businesses who ceased work with Northshore and the persons with relevant knowledge (Interrogatory No. 6).  In reply, Northshore listed only three projects, refused to identify the businesses, and then stated it "will provide this list once the Court has determined the appropriate scope of this litigation." [4] (Id., p. 10).

Courts compel parties to produce information buttressing a claim for lost profits and/or business.  "The court will not allow plaintiffs to make a claim for lost profits, then refuse to produce information to support its assertions." Cont'l Coal, Inc. v. Cunningham, 2007 U.S. Dist. LEXIS 87780 (D. KS. 2007).  See also TCF Inventory Fin., Inc. v. Northshore Outdoor, Inc., 2012 U.S. Dist. LEXIS 91997 (N.D. OH. 2012) (Court excluded party's right to present evidence on lost profits by failing to disclose them in discovery requests).  Northshore must be compelled to divulge the projects it lost and the documents supporting those claims.

### 3. NORTHSHORE HAS NOT PRODUCED ALL REQUESTED TAX INFORMATION.
### (Request for Production No. 13)

Northshore has not furnished all responsive documents related to income tax.  The Ninth Circuit has expressly held tax records are not privileged nor are they protected by any right to privacy. See Heathman v. United States Dist. Court for Cent. Dist., 503 F.2d 1032, 1035 (9th Cir. 1974).  Here, Northshore has not made any objection to producing tax records; however, they have

---

[4]    These are not projects subject to the Union's Motion for Stay. (Dkt. # 51).

UNION'S MOTION TO COMPEL NORTHSHORE
  2:15-cv-01349 MJP - 8

LAW OFFICES OF
Robblee Detwiler & Black
===============================
2101 FOURTH AVENUE, SUITE 1000
SEATTLE, WA 98121
(206) 467.6700·· FAX (206) 467-7589

yet to follow through.  Northshore has not produced 2015 tax information.    Thus, the Court should compel Northshore to produce these documents.

### 4. <u>NORTHSHORE REFUSES TO DISCLOSE CRITICAL INFORMATION ON WHEN AND WHERE ALLEGED ILLEGAL STRIKES AND PICKETING OCCURRED.</u>
**(Interrogatory Nos. 7, 8, 9, 11 and Request for Production Nos. 15, 16, 17, 20)**

Once more, Northshore persists in evading disclosure on basic strike information.  A key foundation upon which Northshore has erected its lawsuit is the allegation that the Union committed unlawful strikes and pickets. (Dkt. # 24, ¶¶ 20-28).   The Complaint allegations presume that Northshore <u>must</u> know where the strikes occurred, when they occurred, and who has knowledge of these facts.  Given the prominence of these facts, the Union requested that Northshore answer those very questions.

The Union requested Northshore disclose the projects it believes were unlawfully struck and explain how they informed the Union they were not working on site. (Medlin Decl. ¶4, Ex, 3, pp. 13-20).  Inexplicably, Northshore pleads ignorance, asserting:

> Northshore would not have knowledge or information as to all persons with knowledge as to when Northshore was not going to be onsite. This information may be with general contractors, subcontractors or the Union itself.

(Medlin Decl. ¶ 4, Ex. 3, p. 14).   Rather than reveal this rudimentary information, Northshore contends the Union must consult other parties.  Northshore's refusal collides with federal discovery rules.  "[C]ourts have consistently held that documents are deemed to be within the 'possession, custody or control' for purposes of Rule 34 if the party has *actual* possession, custody or control, or has the legal right to obtain the documents on demand." <u>In re Bankers Trust Co.</u>, 61 F.3d 465, 469 (6th Cir. 1995) (emphasis in original).  "Control is defined as the legal right to obtain documents upon demand." <u>In re Citric Acid Litigation</u>, 191 F.3d 1090, 1107 (9th Cir. 1999).   Likewise, "knowledge of officers and employees…relative to the subject matter of the instant cause, is imputed to the corporation itself." <u>General Dynamics Corp. v. Selb Mfg. Co.</u>, 481 F.2d 1204, 1210-1211 (8th Cir. 1973).

LAW OFFICES OF
Robblee Detwiler & Black
===============================
2101 FOURTH AVENUE, SUITE 1000
SEATTLE, WA 98121
(206) 467.6700··FAX (206) 467-7589

Here, Northshore possesses responsive information.  Northshore had to know where the strikes occurred in order to allege that it was damaged.  Northshore did identify four projects at issue in the Complaint; however, it will not disclose the dates the strikes transpired nor will it provide documents showing how it informed the Union it was not working.  This is information that is necessary to distinguish between lawful primary strike activity and unlawful secondary activity.  Additionally, Northshore has contractual relationships with the general contractors on the struck projects.  It can easily acquire this information along with the documents from the general contractors.

The best distillation of Northshore's intransigence is Interrogatory No. 8.  In the Complaint, Northshore accused the Union of unlawfully picketing Northshore's own facility. (Dkt. #24, ¶ 27).  When requested to identify the dates and times these pickets transpired, Northshore responded:

> **INTERROGATORY NO. 8:** Identify all dates and times in which the Union picketed your facility(ies) and all persons with knowledge of this matter.
> **ANSWER:** Objection on the grounds that the request is overly broad and not reasonably calculated to lead to the discovery of admissible evidence. The request also seeks information <u>outside</u> of the <u>custody</u> or control of Northshore. Northshore would not have knowledge or information as to all persons with knowledge as to when Northshore was not going to be onsite. The information may be with general contractors, subcontractors or the Union itself.

Inexplicably, Northshore contends that other parties possess the relevant information as to when its <u>own</u> <u>facility</u> was unlawfully picketed.  It is absurd to believe that Northshore does not know the dates that the pickets occurred at its own office.  This feckless response illustrates that Northshore spent minimal time actually responding to the Union's requests.  The Court must compel a genuine response.

**5.  <u>NORTHSHORE MUST DISCLOSE BANKING INFORMATION TO ALLOW THE UNION TO VERIFY THE CLAIMED DAMAGES.</u>**
**(Request for Production No. 19)**

Northshore refuses to furnish banking information claiming "embarrassment and harassment." (Medlin Decl. ¶ 4, Ex. 3, p. 19).  Ninth Circuit authority holds that "depositors have no

UNION'S MOTION TO COMPEL NORTHSHORE
2:15-cv-01349 MJP - 10

LAW OFFICES OF
Robblee Detwiler & Black
==============================
2101 FOURTH AVENUE, SUITE 1000
SEATTLE, WA 98121
(206) 467.6700·· FAX (206) 467-7589

rights in the records of their bank, and that the records may be subpoenaed over the objection of the depositor, notwithstanding the fact that the records concern the account of the depositor." <u>Harris v. United States</u>, 413 F.2d 316, 318 (9th Cir. 1969).  *See also* <u>Sneirson v. Chemical Bank</u>, 108 F.R.D. 159, 162 (D. Del. 1985) (finding no basis under federal law to prevent disclosure of bank records between private parties "particularly when the party resisting discovery has instituted the suit."). "Financial data, including tax returns and statements of income from all sources, are subject to discovery where relevant to plaintiff's claim for damages." <u>Best Western Int'l, Inc. v. Bhagirath</u>, 2013 U.S. Dist. LEXIS 69032 (M.D. La. 2013).

Contrary to Northshore's assertions, the Union does not seek this information for harassment. Rather, the Union solicits banking information to test the validity of Northshore's accusations. Northshore has claimed lost profits, cancelled contracts, monetary damages, and extraordinary expenses. (Dkt. # 24, ¶¶ 26, 29, 49, 53; Prayer ¶¶ 3, 4).   Banking records will objectively shed light on whether these allegations are indeed accurate.  The Union has a right to test the validity of these claims.  The Union is not required to take Northshore at its word.  Presumably, if the bank records show deposits from one of the alleged cancelled contracts, it would disprove Northshore's claims.

Northshore is the party who instituted suit.  Northshore has willingly placed its profits and losses in issue.  Its banking records have immense evidentiary value given that they can potentially undercut the accuracy of the allegations made against the Union.  Given that these records could disprove the claims, they should be disclosed.  The Union limited its request for records from 2014 to 2015.  This will allow the Union to determine if profits and losses changed significantly before and after the strike.  Accordingly, the Court should compel their disclosure.

**6.   NORTHSHORE MUST INDICATE THE DATES IT WAS PRESENT ON THE PROJECTS.**
   **(Interrogatory Nos. 12, 13, 14, 15 and Request for Production Nos. 21, 22, 23, 24)**

Northshore has specifically identified only four projects at issue thus far. (Dkt. # 24).  The Union requested that Northshore disclose the dates they were on-site and working on the four

Law Offices Of
Robblee Detwiler & Black
===============================
2101 Fourth Avenue, Suite 1000
Seattle, WA 98121
(206) 467.6700·· FAX (206) 467-7589

identified projects. (Medlin Decl. ¶ 4, Ex. 3, pp. 21-24).   Importantly, "boilerplate objections or blanket refusals inserted into a response" are inappropriate. <u>Burlington Northern & Santa Fe Ry. v. United States Dist. Court</u>., 408 F.3d 1142, 1149 (9th Cir. 2005).  "[A]nswering interrogatories simply by directing the proponent to rummage through other discovery materials falls short of the obligations imposed by Rule 33." <u>Mulero-Abreu v. P.R. Police Dep't</u>., 675 F.3d 88, 93 (1st Cir. 2012).[5]

Here, Northshore made negligible effort to comply.  Rather, it objects and refers the Union to review a previous interrogatory response (Interrogatory No. 11) for an answer. (Medlin Decl. ¶ 4, Ex. 3, p. 21).  The response is confusing.  When viewing the prior response, it notes that Northshore will not respond until the Union responds. (Medlin Decl. ¶ 4, Ex. 3, p. 19).  This is yet another glaring example of the "Mad Hatter" approach employed by Northshore in responding to discovery.  Rather than furnish facts, Northshore obfuscates and refers the Union to other interrogatories, which in turn provide no information.  Northshore provides this same glib response to Interrogatory Nos. 12, 13, 14, 15. (Medlin Decl. ¶ 4, Ex. 3, pp. 21-23).   Each of these interrogatories requested basic information going to Northshore's claim and must be answered.

## 7. NORTHSHORE HAS STILL NOT FURNISHED DOCUMENTS SHOWING NOTICE TO THE UNION THAT IT WAS NOT WORKING ON THE PROJECTS.
### (Request for Production Nos. 25, 26, 27, 28, 29)

A critical component of Northshore's lawsuit is that it provided notice to the Union that it was not working on the four identified projects. (Dkt. # 24).  Nevertheless, when pressed to provide the information showing notice to the Union, Northshore objected, and alleged the information resides with other parties. (Medlin Decl. ¶ 4, Ex. 3, pp. 24-25).  Whether the Union was furnished with notice goes to the heart of this case.  There is no reason Northshore should not have this

---

[5]      "Each interrogatory must, to the extent it is not objected to, be answered <u>separately</u> and <u>fully</u> in writing." FRCP 33(b)(3). (emphasis added).

UNION'S MOTION TO COMPEL NORTHSHORE
 2:15-cv-01349 MJP - 12

Law Offices Of
Robblee Detwiler & Black
=============================
2101 Fourth Avenue, Suite 1000
Seattle, WA 98121
(206) 467.6700·· Fax (206) 467-7589

information.  Accordingly, the Court should compel a response to Request for Production Nos. 25-29.

**8. NORTHSHORE MUST PROVIDE INFORMATION AND DOCUMENTS SHOWING ITS ALLEGED DAMAGES.**
**(Interrogatory Nos. 16, 17, 18 and Request for Production Nos. 30, 31, 32)**

The Union requested Northshore provide a damages breakdown.  Despite this request, Northshore contends it is still "determining" the damages.  A party, however, has an obligation to "diligently obtain the necessary information and prepare and provide its damages computation within the discovery period." McSwiggin v. Omni Limousine, 2016 U.S. Dist. LEXIS 30865 (D. Nev. 2016).  The damage computation "should provide sufficient detail to enable the defendants to understand the contours of their potential exposure." Id.  *See also* Hoffman v. Constr. Protective Servs., 541 F.3d 1175, 1179 (9th Cir. 2008) (requiring parties to timely supplement damage disclosures).

Here, Northshore neglected to fully respond to the requests on damages. (Medlin Decl. ¶ 4, Ex. 3, pp. 26-29).  The Union specifically requested a project-based damages breakdown (Interrogatory No. 17; Request for Production No. 31). (Medlin Decl. ¶ 4, Ex. 3, p. 27).  Northshore alleged it was "still determining the damages" and provided no project breakdown.  Northshore furnished absolutely no documents in response either (Requests for Production Nos. 30-32).

**9. THE UNION HAS REQUESTED NORTHSHORE DISCLOSE WHEN IT REMOVED EQUIPMENT FROM THE PROJECTS AT ISSUE.**
**(Interrogatory No. 19 and Request for Production No. 33)**

The Union requested information on when Northshore removed its equipment from the struck projects (Interrogatory No. 19). (Medlin Decl. ¶ 4, Ex. 3, p. 30).  Rather than respond, Northshore objected and explained that it "could not be more exact until the Union fully responds to discovery." (Id.).  Whether Northshore had equipment on site leads to the conclusion that its workers were performing sheet metal work.  This would tend to show that the Union was picketing when it had a right to do so.  Accordingly, Northshore should disclose this information.

LAW OFFICES OF
Robblee Detwiler & Black
===============================
2101 FOURTH AVENUE, SUITE 1000
SEATTLE, WA 98121
(206) 467.6700·· FAX (206) 467-7589

1

## **<u>CONCLUSION</u>**

2

Given that eight months have passed without Northshore disclosing the projects at issue, it

3

must be compelled to fully respond.  The Union's discovery requests are relevant and necessary to

4

defending against the claims.  Accordingly, the Court must compel Northshore to respond fully and

5

without evasion.

6

DATED this 14th day of April, 2016.

7

s/Bradley Medlin
Daniel Hutzenbiler, WSBA No. 36938

8

Bradley Medlin, WSBA No. 43486
Margaret Burnham, WSBA No. 47860

9

ROBBLEE DETWILER & BLACK, PLLP

10

2101 Fourth Avenue, Suite 1000

11

Seattle, Washington 98121
Telephone: (206) 467-6700

12

Fax: (206) 467-7589
E-mail: bmedlin@unionattorneysnw.com

13

14

Attorneys for Defendant Sheet Metal
Workers International Association, Local 66

15

16

17

18

19

20

21

22

23

24

25

LAW OFFICES OF
Robblee Detwiler & Black
===============================
2101 FOURTH AVENUE, SUITE 1000
SEATTLE, WA 98121
(206) 467.6700··FAX (206) 467-7589

## CERTIFICATE OF SERVICE

I hereby certify that on April 14, 2015, I electronically filed the foregoing **MOTION TO COMPEL, ORDER GRANTING UNION'S MOTION TO COMPEL NORTHSHORE (PROPOSED),** and **DECLARATION OF BRADLEY MEDLIN IN SUPPORT OF UNION'S MOTION TO COMPEL NORTHSHORE** with the Clerk of the Court using the CM/ECF system, which will send notice of such filing to the following:

Christopher L. Hilgenfeld
Davis Grimm Payne & Marra
701 Fifth Avenue, Suite 4040
Seattle, Washington 98104

s/Bradley Medlin
Bradley Medlin, WSBA No. 43486
Robblee Detwiler & Black, PLLP
2101 Fourth Avenue, Suite 1000
Seattle, Washington 98121
Telephone: (206) 467-6700
Fax: (206) 467-7589
E-mail: bmedlin@unionattorneysnw.com

Attorneys for Defendant Sheet Metal
Workers International Association, Local 66

CERTIFICATE OF SERVICE - 1

LAW OFFICES OF
Robblee Detwiler & Black
=============================
2101 FOURTH AVENUE, SUITE 1000
SEATTLE, WA 98121
(206) 467.6700 · · FAX (206) 467-7589