Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| NORTHSHORE SHEET METAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> SHEET METAL WORKERS INTERNATIONAL ASSOCIATION, LOCAL 66, <br><br> Defendant. | Case No. 2:15-cv-01349 MJP <br><br> ***NORTHSHORE'S RESPONSE TO THE UNION'S MOTION TO COMPEL*** <br><br> **NOTED ON MOTION CALENDAR:** **April 29, 2016** |

COMES NOW Plaintiff Northshore Sheet Metal, Inc. ("Plaintiff" or "Northshore") and responds to Defendant Sheet Metal Workers International Association, Local 66 ("Defendant" or "Union") motion to compel[1]. Plaintiff has properly and timely responded to Defendant's second discovery requests, and has informed the Union that supplemental responses will be made as required.

---

[1] Plaintiff moves to strike the Union's motion for being over-length, pursuant to LR 7(e)(4). The Union failed to adhere to the guidelines in filing an over-length brief. LR 7(f).

*Northshore's Response to Motion to Compel -*
Page 1
Case No. 15-cv-01349 MJP

**DAVIS GRIMM PAYNE & MARRA**
701 Fifth Avenue, Suite 4040
Seattle, WA  98104
Ph. (206) 447-0182 • Fax: (206) 622-9927

**A.     TIMELINESS**

The Union initially states that Plaintiff's discovery responses were untimely.   The Union is incorrect.   The Union served its second set of discovery requests on February 8, 2016.   (Hilgenfeld Decl.)   The rules require a response within 30 days.   The thirtieth calendar day was March 9, 2016.   Plaintiff properly deposited discovery responses in the U.S. Mail on March 9.   (*Id.*)   Per Court Rules, Plaintiff's service was effectuated on March 9, when the responses were deposited in the mail.   Fed. R. Civ. P. 5(b)(2)(C).   Plaintiff's responses were therefore timely.

**B.     RESPONSES TO THE UNION'S DISCOVERY REQUESTS**

The Union's discovery requests focus primary on damages and strike activity. Plaintiff has properly responded to the Union's request with the information that it has available[2].   Answers and responses to most of the Union's requests hinge upon information that the Union has refused to provide regarding its strike activity.[3]   The Union's request, and Northshore's responses, are all primarily focused on similar issues.   As a result, for ease of the Court, Northshore has combined several of the Union's topics.

---

[2] Northshore has informed Local 66 that it is reviewing electronically stored information ("ESI").   This ESI includes the same query that Northshore requested Local 66 to produce and the Union refused due to its "overly burdensome" nature.   That issue is currently in front of the Court.   There are approximately 10,000 to 14,000 emails being reviewed for responsiveness and privilege.   This is the same undertaking that the Union refused to conduct.   Northshore is doing this work, but it does take time, and it has not been completed as of this filing.

[3] The Union has continued to rely upon the misconception that Northshore is aware of all of its strike activity. That is simply not the case.   Part of Northshore's claim, in fact, is that the Union has continued its strike action when Northshore is not present, and had meetings and made threats to Northshore's clients when Northshore was not present.

*Northshore's Response to Motion to Compel -*
Page 2
Case No. 15-cv-01349 MJP

**DAVIS GRIMM PAYNE & MARRA**
701 Fifth Avenue, Suite 4040
Seattle, WA  98104
Ph. (206) 447-0182 • Fax: (206) 622-9927

1.   **Project-Related Information: (Dkt. 67-5, Int. 2, 3, 4; RFP 7, 8, 9, 10)**
      **Lost Business and Cancelled Work (Dkt. 67-5, Int. 5, 6; RFP 11, 12)**
      **Illegal Strikes / Picketing (Dkt 67-5, Int. 7, 8, 9, 11; RFP 15, 16, 17, 20)**
      **Dates of the Project (Dkt. 67-5, Int. 12, 13, 14, 15; RFP 21, 22, 23, 24)**
      **Notice to the Union (Dkt. 67-5, RFP 25, 26, 27, 28, 29)[4]**
      **Damages (Dkt. 67-5, Int. 16, 17, 18, RFP 30, 31, 32)**
      **Equipment (Dkt. 67-5, Int. 19, RFP 33)**

Although each of these requests is slightly different, the issues involved with each response (or answer) are the same.  Below are the answers to Interrogatory No. 2 and response to Request for Production No. 7 (which is the corollary RFP).  The other answers and requests depend on the Union's request, and are specifically tailored to those requests. There are, however, similar issues that present the focus of the Union's motion to compel. As a result, Northshore does not detail each of those specific responses.  See Dkt. 67-5.

> **INTERROGATORY NO. 1:**  Identify every project you have been damaged upon relating to the Union's actions, the date you suffered damages, the total amount of damages on each identified project, and all persons with knowledge of those matters.
>
> **ANSWER:** Objection on the grounds that the request is overly broad and vague as to persons with knowledge involving the Union's illegal strike activity.  This would include the public, general contractors and their employees, subcontractors and their employees, Northshore customers and potential customers, and Union members. Objection on the grounds the request seeks information related to Plaintiff's expert testimony that is ongoing and being gathered. Northshore will adhere to the court's scheduling order to identify expert damages.
>
> Subject to and without in any way waiving its general objections and the foregoing objections, and to the extent Northshore understands this request, Northshore responds:  The Union's entire strike action has breached its contractual obligations, and the Union's strike has been undertaken to illegally enmesh neutral employees and employers in disputes not their own.  The Union's contractual breach and its other secondary boycott activities are entangled in its entire strike action.  Defendant identifies only three projects where Plaintiff has been damaged.   Therefore, Plaintiff provides the following

---

[4] Northshore informed the Union that is has provided the Union with the correspondence in its control.  There may be additional responsive ESI. *See fn. 2.*  That ESI will be produced upon review.

**DAVIS GRIMM PAYNE & MARRA**
701 Fifth Avenue, Suite 4040
Seattle, WA  98104
Ph. (206) 447-0182 • Fax: (206) 622-9927

information concerning these three projects: (1) Chambers Creek Waste Treatment Plant (General Contractor: M.A. Mortensen, contact is Nathan Luke at 425-895-9000), (2) Meridian Health Center Project (General Contractor: Lease Crutcher Lewis, contact is Aaron Ullrich at 206-622-0500), (3) Bellevue Square/JC Penney Project (General Contractor: GLY, contact is Eric Vonderschere at 425-417-0329).

Northshore has been damaged on more projects than just the three identified by Defendant, and is compiling the comprehensive list of projects. Northshore will provide this list once the Court has determined the appropriate scope of this litigation and consistent with the Court's Scheduling Order. *See* contracts previously produced (NSSM 002421 - NSSM 002849; NSSM 00322 - NSSM 00344; NSSM 003445 - NSSM 003603; NSSM 003604 - NSSM 007095).

\*\*\*

**REQUEST FOR PRODUCTION NO. 7**:   Please produce all documents related to your response to the previous interrogatory that contain information that is responsive to the previous interrogatory, or that you relied upon in providing your response to the previous interrogatory.

**RESPONSE:**   Objection on the grounds that the request is overly broad and vague as to persons with knowledge involving the Union's illegal strike activity. Objection on the grounds the request seeks information related to Plaintiff's expert testimony that is ongoing and being gathered. Northshore will adhere to the court's scheduling order to identify expert damages.

Subject to and without in any way waiving its general objections and the foregoing objections, and to the extent Northshore understands this request, Northshore responds:   *See* answer to Interrogatory No. 2.   Any additional non-privileged responsive documents related to the damages suffered by Northshore and the total damages will be produced upon receipt.

### (a) Northshore has Properly Responded Plaintiff's Requests

First, Plaintiff did properly respond to each of the Union's interrogatories. Plaintiff has provided over 7,000 documents.[5] These documents are the contracts with the general contracts that provide the site information, contact persons, and project timelines.

---

[5] In contrast, the Union has provided less than 200 responsive documents that were not previously filed with the court or correspondence between the attorneys.

*Northshore's Response to Motion to Compel -*
Page 4
Case No. 15-cv-01349 MJP

**DAVIS GRIMM PAYNE & MARRA**
701 Fifth Avenue, Suite 4040
Seattle, WA 98104
Ph. (206) 447-0182 • Fax: (206) 622-9927

Northshore is not required to go through these documents (rather than the Union) and pick out this information.   These documents are specific records, identifying information specifically responsive to the Union's request.   Northshore's response in identifying and pointing the Union to these documents is sufficient pursuant to Fed. R. Civ. R. 33(d); *see also Cambridge Electronics Corp. v. MGA Electronics*, 227 FRD 313, 323 (C.D. Cal. 2004).

Under Rule 33(d), a party must only specify to the requesting party where the information may be found.   The contracts themselves are self-explanatory.   Each contract provides the name of the General Contractor, the location of the work (i.e. construction site), the schedule of the work, the amount of the contract, and the contact persons for the General Contractor.

Moreover, it is Northshore's counsel's understanding that the lost / cancelled work is often detailed in the ESI.   *See fn. 2.*   Once the responsive ESI is found and reviewed, it will be produced.   Northshore is currently working on that production.   Northshore intends to produce responsive information regarding the lost / cancelled work, but production takes time due to the voluminous nature of the request[6].   Northshore has identified specific documents that are responsive to the Union's request.   This complies with the requirements of Rule 33(d).

### (b) Plaintiff's Objections are Well-Founded.

Next, Plaintiff has properly objected to the Plaintiff's discovery requests.   For one, the Union's requests are overly broad as to the person's with knowledge of the Union's strike activity.   Individuals that have information about the Union's strike activity, include:

---

[6] Northshore has not refused to produce this information.   Northshore has informed the Union of the nature of the request and the fact that it is extremely time consuming.   Due to the Union's objections as overly burdensome, it seems the Union's position on this point is contradictory.

*Northshore's Response to Motion to Compel -*
Page 5
Case No. 15-cv-01349 MJP

**DAVIS GRIMM PAYNE & MARRA**
701 Fifth Avenue, Suite 4040
Seattle, WA  98104
Ph. (206) 447-0182 • Fax: (206) 622-9927

(a) the general public; (b) general contractors and their employees; and, (c) subcontractors and their employees.  A party has no obligation to obtain records from nonparty independent contractors.  Hon. James Wagstaffe, Guide, Federal Civil Procedure Before Trial (2016) (citing *Nosal v. Granite Park LLC,* 269 FRD 284, 290 (S.D.N.Y. 2010)).  Northshore provided information to the three construction sites, but cannot answer for those not in its possession, custody or control.  Northshore has previously produced in its initial disclosure all Northshore employees that have knowledge of the Union's strike activity.

Second, the Union's requests also seek reports being produced by Plaintiff's expert witness.  The Union has been informed that these reports will be produced within the Court guidelines.  (Dkt. 67-5, at 6-10.)  The information is being gathered and will be produced upon receipt.  Due to the Union's limited responses, the accumulation of the information is slowed.  Northshore has been informed that the Union has had clandestine meetings with General Contractors (and presumably others) that involved threats of continued strike activity, and damages presumably flowed from those meetings.  However, until the Union is required to identify those meetings, and produce the responsive information as to those meetings, the extent of those damages is difficult and time consuming to ascertain.

### (c) Under the Circumstances, Plaintiff has Properly Limited its Responses to the Three Construction Sites.

Third, the Union has limited any responses in its lawsuit to three construction sites, and has refused to address the breach of contract claim at all.  Plaintiff does not believe that is the proper limitation of this lawsuit.[7]  Due to the Union's refusal to respond to Plaintiff's discovery requests, and its motion to compel arbitration, there is a significant tactical

---

[7] Plaintiff requested that the Union withhold filing the motion to compel until the Court had the opportunity to rule on the current motions before the Court.  Those rulings will necessarily determine the next steps.  The Union has refrained from taking that approach.

*Northshore's Response to Motion to Compel -*
Page 6
Case No. 15-cv-01349 MJP

**DAVIS GRIMM PAYNE & MARRA**
701 Fifth Avenue, Suite 4040
Seattle, WA  98104
Ph. (206) 447-0182 • Fax: (206) 622-9927

disadvantage if Plaintiff were to answer. There is generally only limited, to no, discovery in a labor arbitration. Elkouri & Elkouri, How Arbitration Works, at 8-21 (7th ed. 2012) ("It has been generally accepted that unless authorized by applicable statute or collective bargaining agreement, the arbitrator has no subpoena power.") Whether even limited discovery is permitted is entirely up to the arbitrator that is selected by the parties. Plaintiff would run the risk of having one-way discovery in a future labor arbitration should one be ordered. If the Court ordered arbitration, and did not require production of documents related to the breach of contract claim, the Plaintiff would have provided discovery, when the Union was not required to do so.

Finally, as to Interrogatory No. 8 (because that interrogatory was highlighted by the Union), it does illustrate how the Union has handled this litigation. It is telling that the Union has failed to provide the Court with Northshore's complete answer. The Union's briefing cuts off portions of Northshore's answer. Specifically, the Union fails to inform the Court that Northshore did identify all of the Northshore employees that would have knowledge of the Union's strike activity. Contrary to the Union, Northshore provided extensive initial disclosures, providing the names and contact information for the individuals that had knowledge or information into the Union's strike activity. *Plaintiff's Initial Disclosures, Attachment A*. Northshore, because of the Union's failure to provide even basic information such as when and where its strike action has taken place, cannot provide any certainty as to when and where its employees were located when the strike action was at that location. Northshore has also informed the Union that it will provide the payroll information regarding the construction sites where the employee worked on a given day, upon receipt.

*Northshore's Response to Motion to Compel -*
Page 7
Case No. 15-cv-01349 MJP

**DAVIS GRIMM PAYNE & MARRA**
701 Fifth Avenue, Suite 4040
Seattle, WA 98104
Ph. (206) 447-0182 • Fax: (206) 622-9927

Moreover, Northshore interpreted the Union's request more broadly than simply to involve its own facility.  Northshore interpreted the request to include construction sites where Northshore was assigned to work.  That said, even at its own facility, Northshore does not know every person that has knowledge as to the Union's strike at that facility.  As stated, there is the general public and others that witnessed the illegal acts, beyond Northshore. Northshore has though provided the names and contact information for the Northshore employees.

## 2.    Tax Information (Dkt. 67-5, RFP 13)

The Union sought filed tax returns for 2014 and 2015.  Northshore has fully responded.  Northshore provided the 2014 tax return.  Northshore has not provided its 2015 tax return because there is not a finalized 2015 tax return, yet.  Northshore has informed the Union in writing and on the phone that it would supplement its response to the Union when the 2015 tax return is finalized.

## 3.    Banking Information (Dkt. 67-5, RFP No. 19)

The bank records request is aimed directly at harassing Northshore.  There is no relevancy to the Union's request.  During the Rule 26(f) conference, Northshore's counsel asked the Union's attorney if they could limit the request, and what were they actually seeking.  The Union's attorney refused to limit the request.

> **NO. 19:**  Please produce all banking records for years 2014 and 2015.
>
> **RESPONSE:**  Objection on the grounds that the request is overly broad, unduly burdensome, not relevant, or reasonably calculated to lead to discovery of admissible evidence.  There is no basis that all banking records in the years 2014 and 2015 are relevant to this action.  The request is purely a fishing expedition aimed at embarrassing and harassing Northshore.  For the tax returns, *see* Request for Production No. 13.

*Northshore's Response to Motion to Compel -*
Page 8
Case No. 15-cv-01349 MJP

**DAVIS GRIMM PAYNE & MARRA**
701 Fifth Avenue, Suite 4040
Seattle, WA  98104
Ph. (206) 447-0182 • Fax: (206) 622-9927

1    The financial records sought are simply not relevant to the lawsuit, or any damages

2    calculations. Northshore has already provided the tax returns showing profits and losses;

3    moreover, Northshore has informed the Union that it will provide the payroll information.

4    The banking records will not show damages, nor will they show whether a contract was lost

5    or cancelled. The Union is not entitled to engage in a fishing expedition of all of

6    Northshore's banking activity for a 2 year period. *Fitz v. Charter Tp. Of Comstock,* 2010

7    WL 1856481, at *1 (W.D. Mich. 2010) (citing *Cuomo v. Clearing House Ass'n, LLC,* 557

8    U.S. 519, 531 (2009) ("Judges are trusted to prevent 'fishing expeditions' or an undirected

9    rummaging through bank books and records for evidence of some unknown wrongdoing.")).

10   The Courts are required to recognize when a request is a fishing expedition with only a

11   speculative benefit. *Koch v. Koch Industries, Inc.,* 203 F.3d 1202, 1238 (10th Cir. 2000).

12   When that occurs, the Court should deny the request to compel. The request must be

13   relevant to the lawsuit, and not simply a fishing expedition.

14       Furthermore, when asked to refine or limit the scope of the request, Union's counsel

15   refused. The extent of the fishing expedition is further evidenced by the temporal scope of

16   the request. The Union does not limit its request to banking records related to the work

17   performed by Northshore after August 20, 2015.[8] The request is also not limited in any

18   manner as to whether the money was received or paid to general contractors, or related to

19   the Union's illegal strike activity in any manner. The broad nature of the Union's request is

20   simply aimed at harassing Northshore.

---

[8] This is the initiation date of the Union's strike action.

*Northshore's Response to Motion to Compel -*
Page 9
Case No. 15-cv-01349 MJP

**DAVIS GRIMM PAYNE & MARRA**
701 Fifth Avenue, Suite 4040
Seattle, WA 98104
Ph. (206) 447-0182 • Fax: (206) 622-9927

1

4.      **Recordings, Video and Photographs (RFP No. 14)**.

2

It is unclear whether this request is part of the Union's motion.  The Union does not

3

mention or argue that Plaintiff failed to properly respond to RFP No. 14 in its brief;

4

however, the Order proposed by the Union includes Request for Production No. 14.  As

5

Northshore's counsel has informed the Union by writing and orally, Northshore has

6

provided all non-privileged responsive documents related to this request.

7

**C.      CONCLUSION**

8

Plaintiff has properly and timely responded with the information that it has available

9

at this time.  Once the Union provides responsive information to Northshore, it will permit

10

Northshore an opportunity to review its damages assessment, and other information, to

11

understand if it has fully complied.  For all of the aforementioned reasons, the Union's

12

motion to compel should be denied.

13

Respectfully Submitted this __25th__ day of April, 2016.

14

15

By: _/s/ Christopher L. Hilgenfeld_____

16

Christopher L. Hilgenfeld, WSBA #36037
Davis Grimm Payne & Marra

17

701 5th Avenue, Suite 4040
Seattle, WA  98104-7097

18

Ph. (206) 447-0182 | Fax: (206) 622-9927
Email: chilgenfeld@davisgrimmpayne.com

19

**Attorneys for Plaintiff**
**Northshore Sheet Metal, Inc.**

20

21

22

23

24

25

*Northshore's Response to Motion to Compel -*
Page 10
Case No. 15-cv-01349 MJP

**DAVIS GRIMM PAYNE & MARRA**
701 Fifth Avenue, Suite 4040
Seattle, WA 98104
Ph. (206) 447-0182 • Fax: (206) 622-9927

## CERTIFICATE OF SERVICE

I hereby certify that on the _____25th_____ day of April, 2016, I electronically filed the foregoing *NORTHSHORE'S RESPONSE TO THE UNION'S MOTION TO COMPEL* with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

> **Attorneys for Defendant:**
> Daniel Hutzenbiler
> Margaret A. Burnham
> Bradley L. Medlin
> Robblee Detwiler & Black
> 2101 Fourth Avenue, Suite 1000
> Seattle, WA  98121-2317
> Email: dhutzenbiler@unionattorneysnw.com
> Email: mburnham@unionattorneysnw.com
> Email: bmedlin@davisgrimmpayne.com

Betsy E. Green, Legal Assistant to
Attorneys for Northshore Sheet Metal Inc.
E-mail: bgreen@davisgrimmpayne.com

*Northshore's Response to Motion to Compel -*
Page 11
Case No. 15-cv-01349 MJP

**DAVIS GRIMM PAYNE & MARRA**
701 Fifth Avenue, Suite 4040
Seattle, WA  98104
Ph. (206) 447-0182 • Fax: (206) 622-9927